THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PHILLIP CARTER, Defendant-Appellant.

First District (5th Division)    No. 62505

Opinion filed August 13, 1976.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) and sentenced to serve four to eight years in the penitentiary. On appeal, he contends he was denied a fair trial by the ineffective assistance of counsel.

On April 17, 1974, Walter Fields filed a criminal complaint charging that defendant took $200, a television, a wristwatch, and a revolver from him at gunpoint on February 24, 1974, at 3652 South Indiana. At defendant's preliminary hearing, an arresting officer testified that he advised defendant of his constitutional rights before defendant admitted being at the scene with a toy gun and taking $98 and a wristwatch. On cross-examination, the officer repeated those rights, but failed to state that defendant's right to an attorney included a right to have an attorney during his interrogation.

The following pertinent evidence was adduced at trial.

*For the State*

*Walter Fields*

At 8 a.m. on February 24, 1974, he was playing cards with Eddie Benson in his basement apartment at 3652 South Indiana. Defendant, whom he had known for about two or three months, and another man entered the apartment and defendant stated he wanted to shoot $5 in a

dice game. Defendant was not a very good card player or dice shooter. After defendant lost his money, defendant displayed a gun, picked up the money and announced, "This is a stickup." Defendant then fired a shot into the west wall of the apartment and said, "I want the money and I mean business." Defendant reached into Field's pocket and took "maybe a hundred dollars." After ransacking Field's bedroom, defendant also took a television and a revolver. Defendant told him and Benson to drop their pants to see if they had more money or any other weapons. The entire incident took approximately 20 minutes. After defendant left, he called the police. He admitted he was testifying under subpoena and that he wanted to drop charges because defendant's mother had given him $400, the approximate value of the property. He denied using his apartment for business, but admitted that the police had raided his apartment on four or five occasions. He had never discussed lending money to defendant.

*Officer Fred Johnson, a Chicago Police Department Investigator*

During his interrogation of defendant at the police station, defendant admitted to being at the scene with a toy gun and taking $98 and a wristwatch. When he visited Field's apartment, he saw a bullet hole in the west wall. Defendant never mentioned asking Fields for a loan.

*Officer Robert Napier, a Chicago Police Department Investigator*

He corroborated his partner Johnson's account of defendant's confession. Defendant additionally denied taking a gun and television. He could not recall defendant ever saying he asked Fields for a loan.

Thereafter, the prosecutor moved to adjourn the cause for the day to allow the State to secure an additional occurrence witness, Edward Benson. He would not represent that the State could locate Benson nor that Benson would be a valuable witness to the State even if located. Defense counsel initially opposed the motion on the ground that Benson's testimony would be repetitious. However, when the prosecutor suggested defendant stipulate that Benson, if called, would testify substantially the same as Fields, defense counsel agreed to so stipulate to everything except Benson's veracity.

After the State rested, defense counsel moved to discharge defendant, but offered no specific reasons. The court denied the motion.

*Defendant Phillip Carter, on his own behalf*

On February 24, 1974, he was on probation for another robbery. He went to Field's apartment to borrow money, but when Fields refused to lend the money, he left. He had been to Field's apartment to shoot dice 30 or 40 times in the past four or five months. He had lost three or four thousand dollars during that period. He denied taking a gun to the

apartment, firing any shots into the wall, or taking anything away from the apartment. He later admitted having a blank gun with him in the apartment and needing money badly on February 24, 1974.

Defendant then rested and defense counsel made the following remarks in closing.

"Judge, I say it is obvious here that we have a young man who acted without any discretion and the State's evidence states that he had a gun, the young man says he did not have it. I won't go into that, Your Honor, with reference to weighing out the situation here as much as to say that I think it would be obvious, Your Honor, what we have heard here that the young man wasn't very brilliant in doing what he did, even on the first occasion, and the occasion for which he is before the Court right now, * * *.

I would like the Court to consider that, that you have a young man here, Judge, who went on the premises, he says, for a loan. I believe that it is obvious that he probably lost a lot of money because I don't know how he could do otherwise than how to do anything but lose, and he is a loser right here as far as being on trial, and having been involved in something before of this nature, * * *.

* * * if the Court could consider that, to grant the young man discharge, in view of the circumstances, even if he had to be examined by a psychiatrist, if the Court could also consider that the State brought out and the complaining witness brought out 'that he didn't wish to prosecute the young man * * *.'

I would like the Court to consider that, please."

After the trial court entered its judgment a hearing was set to consider post-trial motions and sentencing. The following colloquy occurred at the outset of that hearing.

"THE COURT: Post trial motions disposed of?

[Defense Counsel]: I don't think we had any.

THE COURT: Do you intend to file any, * * *?

[Defense Counsel]: Not offhand."

OPINION

■■ Defendant contends he was denied a fair trial by the ineffective assistance of counsel. Generally, matters of trial conduct and tactics adopted by defense counsel based upon his professional opinion of the merits of a case will not be criticized by a reviewing court unless a strong showing is made that defense counsel's conduct virtually deprived defendant of a trial. (*United States v. Bella* (7th Cir. 1965), 353 F.2d 718.) Mere errors of judgment do not amount to incompetence. (*People v. Palmer*, 27 Ill. 2d 311, 189 N.E.2d 265.) The incompetency must result in

substantial prejudice to defendant without which the outcome would probably have been different. (*People v. Palmer*, 31 Ill. 2d 58, 198 N.E.2d 839.) However, when the total factual context peculiar to a case discloses a violation of the ideas of fundamental fairness inherent under the Due Process clause, Illinois courts will not hesitate to reverse and require a retrial. *People v. Cox*, 12 Ill. 2d 265, 146 N.E.2d 19; *People v. Jackson*, 96 Ill. App. 2d 99, 238 N.E.2d 234.

■■ In the instant case, we believe defendant was denied the effective assistance of counsel. Counsel's closing argument is the most notable incident that leads us to this conclusion. A defendant's closing argument permits an answer to the State on the law and the facts and a presentation of the defense theory. (*People v. Bundy*, 295 Ill. 322, 129 N.E. 189.) Here, counsel's closing argument not only failed to perform this function, but was tantamount to an admission of his client's guilt. Counsel characterized defendant as a man "who acted without any discretion" and "wasn't very brilliant in doing what he did." He specifically declined to discuss the factual discrepancy concerning whether defendant was armed and failed to pursue the defense theory that defendant was present to secure a loan. Counsel abdicated his client's position even though defendant had specifically denied that he was armed or that he robbed the complaining witness. Instead, he called defendant "a loser" in need of psychiatric examination. Such failures cannot be overlooked as mere errors in judgment or trial strategy.

In *People v. Redmond*, 50 Ill. 2d 313, 278 N.E.2d 766, our Supreme Court reversed a murder conviction on the ground that defendant had been denied the effective assistance of counsel. The court characterized counsel's closing argument as being "totally confusing and incoherent" and thus, deemed it "meaningless." We believe that the meaningless summation in the instant case together with counsel's failure to take advantage of the police officer's omission of part of the *Miranda* warnings, and a less than vigorous defense which a review of the record discloses, warrants a finding that defendant was denied the effective assistance of counsel.

For these reasons we reverse the judgment of the circuit court and remand this cause for a new trial.

Reversed and remanded.

BARRETT and DRUCKER, JJ., concur.