THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM GARY, Defendant-Appellant.

Third District    No. 75-363

Opinion filed June 22, 1977.—Rehearing denied July 20, 1977.

STOUDER, J., dissenting.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's
Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (Robert M. Hansen and James E.
Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the
People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant William Gary appeals from convictions in the Peoria County

Circuit Court of armed robbery and armed violence, following a jury trial. He was sentenced to concurrent terms of 8 to 24 years imprisonment on the armed robbery conviction and 1 to 3 years imprisonment on the armed violence conviction.

On appeal in this court defendant argues that (1) he was deprived of a fair trial by ineffective assistance of his appointed counsel, and (2) he was improperly convicted and sentenced on both armed robbery and armed violence counts because both offenses arose out of the same incident.

Defendant Gary (together with John L. Turner) was indicted for armed robbery of Harry P. Foreman and for armed violence, predicated upon an aggravated assault on Foreman. Defendant's trial was severed from that of his alleged co-defendant, Turner. At defendant's trial, Foreman, the complaining witness, testified that at 7:15 p.m. on October 25, 1974, he was approached by defendant Gary and Turner. He knew the men with whom he had shot craps on many occasions. Foreman testified that defendant, who was holding a shotgun, told Foreman, "give me what you got," and then fired a shot into the ground about one foot away from Foreman's feet. Foreman thereupon laid $55 of his money on the ground and Turner picked it up. Foreman fled around the corner, and thereafter heard two more shots fired from the area where he had been but not within his view at that time. When he was asked, on cross-examination, whether he had shot craps with defendant on the date of the alleged robbery, Foreman stated that while he had shot craps with defendant on previous occasions, he did not shoot craps with defendant on that day, but that he was present at a crap game at which time he loaned $6 to one of the players in that game but did not have any interest in any winnings from that game. He stated he did not know if Gary was cheated out of $55 during the game and that, while $55 had been taken from him, Foreman, during the robbery, defendant left him with about $9.

A resident of a nearby apartment building, Mrs. Harness, testified that she saw three people from her kitchen window, and that one had a shotgun and that she also heard three shots. After the final shot had been fired, Mrs. Harness called the police who later recovered the spent shells.

Defendant did not testify and the only defense evidence presented was stipulated testimony of Officer Sauer concerning Foreman's statements to the police shortly after the alleged robbery. It was stipulated by the parties that Foreman told Sauer that he had been robbed of $82; that he was shot at three times by defendant; that defendant said to him, "I ought to kill you"; and that defendant fired a shot at him after Foreman started walking away. The police officer also stated that defendant had said to him, "Give me what you got, I ought to shoot you."

In his closing argument to the jury, defense counsel accused Foreman of lying and pointed out the discrepancies between his trial testimony and the previous statements made to Officer Sauer. Defense counsel then

argued that Foreman had been untruthful in denying participation in the crap game on the date of the alleged robbery. Counsel also stated:

" * * *He [defendant] doesn't have the thought process that normally someone cheated me, what would I do? Well I would go to the police or I would file a lawsuit. Well maybe I am a little more advanced that Mr. Gary is. Maybe he overreacted, committed reckless conduct is what he did, committing aggravated assault. Yeah he did that. But did he commit the armed robbery, did he commit armed violence? I don't think so. I don't think he did that. I don't think it would be a fair verdict, either one of those in this case. Yes he committed an aggravated assault, yes he committed a reckless conduct—a young foolish man did a young foolish thing. He didn't intend to hurt that Harry Foreman. * * * Mr. Foreman was involved in a crap game where this young man [defendant] was cheated, cheated out of about Fifty-Five Dollars. This young man [defendant] did a foolish thing then went home got his shotgun and foolishly came back and never intended to commit an armed robbery as such just said I want my money back give it to me and he took the Fifty-Five Dollars, but he left Mr. Foreman with Seventeen Dollars. He didn't take all the man's [Forman's] money. He just took what he had been cheated out of that is all. * * * You are going to have eight different verdicts ladies and gentlemen. You are going to have armed robbery, armed violence which are felonies. All the consequences that go with the defendant, I don't have to elaborate on those. You can for your own minds determine what that does to a young man. You are also going to be given what are called lesser included offenses and that is an offense that are [sic] lesser includible in a felony but they are not as disastrous * * *. Aggravated assault, reckless conduct and as I stand here and tell you and this young man has told me reckless conduct and aggravated assault he is guilty of. Yes, he did a foolish thing, but armed robbery, armed violence brands a fellow for the rest of his life in the words of Harry Foreman because of what happened there. Back in the old days when you went back and took something that belonged to you anyway you didn't find yourself in a felony * * *I don't want to go back to those days. All I am saying is [for] you to consider all the facts consider them in a human, very human and fair manner, come up with a fair decision, please. I think that fair decision is going to be yes, guilty of aggravated assault and guilty of reckless conduct. * * *"

The jury was then instructed on the offenses of armed robbery, armed violence, reckless conduct and aggravated assault. Following

deliberations, the jury returned guilty verdicts on armed robbery, armed violence, reckless conduct and aggravated assault, and the trial court subsequently entered judgments of conviction on the armed robbery and armed violence charges.

During the sentencing hearing, defense counsel indicated that he had advised defendant not to testify at trial by the reason of defendant's prior convictions. It appears from the record that defendant had at least four prior convictions, two for robbery, one for reckless conduct and one for unlawful possession of firearms. At the sentencing hearing, defendant made a statement to the court, in which he elaborated upon his version of the incident, stating that Foreman and another man cheated him during an illegal dice game and that he (defendant) then retook his money. Defendant concluded:

"Well, I had the short end of the stick and I wanted my money back from him and that is how I went about—how I felt the right way about going and getting it. I couldn't call the police and tell them we had been shooting dice on a street corner and that the man had beat me out of the money. I couldn't tell them I was actually robbed. So that is how I feel about it. I didn't feel that I had robbed him * * * or endangered his life."

The trial court then imposed concurrent sentences of 8 to 24 years imprisonment on the armed robbery offense and 1 to 3 years on the armed violence offense.

Defendant initially argues on the appeal that he was deprived of a fair trial due to ineffective assistance of his appointed counsel, as established by the failure of defense counsel to present a defense that defendant was merely retaking gambling losses, and was therefore not guilty of armed robbery, as contended in defense counsel's statements in closing argument. A case of some pertinence on the issue is *People v. Carter* (1st Dist. 1976), 41 Ill. App. 3d 425, 428-29, 354 N.E.2d 482, where the court said:

"Generally, matters of trial conduct and tactics adopted by defense counsel based upon his professional opinion of the merits of a case will not be criticized by a reviewing court unless a strong showing is made that defense counsel's conduct virtually deprived defendant of a trial. (*United States v. Bella* (7th Cir. 1965), 353 F.2d 718.) Mere errors of judgment do not amount to incompetence. (*People v. Palmer*, 27 Ill. 2d 311, 189 N.E.2d 265.) The incompetency must result in substantial prejudice to defendant without which the outcome would probably have been different. (*People v. Palmer*, 31 Ill. 2d 58, 198 N.E.2d 839.) However, when the total factual context peculiar to a case discloses a violation of the ideas of fundamental fairness inherent

under the Due Process clause, Illinois courts will not hesitate to reverse and require a retrial. *People v. Cox*, 12 Ill. 2d 265, 146 N.E.2d 19; *People v. Jackson*, 96 Ill. App. 2d 99, 238 N.E.2d 234."

■■ In the instant case, defendant argues that his counsel failed to present, as a defense to the armed robbery charge, the contention that defendant was retaking his gambling losses, even though he argued this contention in absence of direct testimony by defendant. Appointed counsel in this case was faced with an overwhelming case as against defendant. The victim of defendant's alleged crime, testified to the involvement of defendant and the testimony was corroborated in part by testimony of the disinterested witness who viewed the alleged robbery from her apartment. Defendant, pursuant to the advice from his appointed counsel, did not testify at the trial by reason of his prior criminal record. We do not believe that such advice by counsel evidences anything other than counsel's sound professional opinion. Statements made by defendant at the sentencing hearing, the only statements of defendant of record, admitted the forcible taking of money from Foreman and indicated that after suffering gambling losses, defendant believed that his only effective recourse was to retake his losses at gunpoint.

It is apparent that defendant's appointed counsel concluded that (by reason of the difficulty and improbability of convincing a jury that defendant did not actually force a victim to give up money at gunpoint) the more intelligent tactical approach was to ask the jury to find defendant guilty of a lesser offense. Such appeals to the sympathy of a jury are not uncommon, and at times are the most promising avenue that a defense has available in a case such as we have before us.

■■ While the statements made by defendant's counsel in his argument may, when taken out of context, appear to be admissions of defendant's guilt, we believe that the thrust and intent of defense counsel's closing argument was not to acknowledge defendant's guilt of the serious charges of armed robbery or armed violence, but rather to first minimize, to the extent possible, the impact of the State's evidence and then, argue to the jury the alternatives, if the jury concluded that defendant did in fact commit the alleged acts. The effort to persuade the jury to find defendant guilty of the lesser offenses was an obvious trial tactic which would seem to be reasonable.

We conclude, that in the circumstances in the instant case, the determination of defendant's counsel in matters of the conduct of the trial and trial tactics, including his decision to forego the testimony of defendant, but to appeal, in the closing argument, for clemency by the jury, clearly did not establish ineffective assistance of counsel which

deprived defendant of a fair trial. The fact that defense counsel's tactics were not successful does not establish that defense counsel's tactics require reversal of this cause. We are unable to discover any acts by defendant's counsel which resulted in a substantial prejudice to defendant, without which the outcome would probably have been different.

Defendant relies principally upon the case of *People v. Carter* to which we have referred, where a defendant was deemed to have been deprived of effective assistance of counsel. In that case, however, the court found that the argument of counsel was tantamount to an admission of his client's guilt. The court noted that counsel specifically declined to discuss the factual discrepancy as to whether defendant was armed and failed to pursue the defense theory that defendant was present to secure a loan. The court there said that counsel abdicated his client's position even though defendant had specifically denied that he was armed or that he robbed the complaining witness. In the *Carter* case, the court states, the counsel called defendant a "loser" and that failures of this type could not be overlooked as mere errors in judgment or trial strategy. The court also noted that defense counsel's closing argument was only one of a number of factors which compelled the court to find defendant was denied effective assistance of counsel.

In the instant case, defendant places much reliance solely upon the impact of counsel's closing argument. While isolated fragments and phrases from the closing arguments in this case and in *Carter* may be thought to be comparable, we believe that counsel's argument in the instant case was permissibly directed to the sympathy of the jury, in the event the jury should find that defendant actually committed the acts alleged, which was rather clearly established by the evidence. Unlike the *Carter* case, in this case the defendant did not testify to any theories which defense counsel ignored in his closing argument. The obvious objective of defendant's counsel in the argument in the instant case was to appeal to the jury for mercy, since the evidence clearly established that defendant used a gun in obtaining the $55 from Foreman. We also note a distinction from *Carter* in that, in the instant case, there was a jury trial which may have led counsel to believe that there was greater susceptibility to a plea for clemency, than in a trial by the court. From the record it appears that defense counsel presented a vigorous defense in behalf of defendant and exercised his best judgment in so doing. It does not appear from the record that any alternative testimony from defendant, if he took the stand, coupled with a showing that defendant had been convicted of robbery and other crimes previously, would motivate the jury to be more likely to find the defendant not guilty of armed robbery or armed violence.

■■ A final argument is made that the trial court erred in entering judgment and imposing sentences on both armed robbery and armed violence for the reason that both offenses arose out of the same incident. The armed violence indictment charged that defendant shot a gun at Foreman and thereby placed him "in reasonable apprehension of receiving a battery." The record shows that the first shot was fired near Foreman before the robbery. That shot obviously merged into the armed robbery offense (*People v. Leggett* (3d Dist. 1971), 2 Ill. App. 3d 962, 275 N.E.2d 651). The two shots which followed came after Foreman had fled across the street and around the corner. He did not see who fired the shots or where they were aimed. He stated, "Well, I don't know nothing about the other two shots, but I heard them." It appears from this testimony that the record is deficient in making a showing that, by reason of those two shots, Foreman was placed in reasonable apprehension of receiving a battery. (*People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321.) We, therefore, conclude, on the basis of the record, that the armed violence conviction should be reversed, since only the first shot which was fired (which should be construed as part of the alleged armed robbery) could have qualified specifically in support of the armed violence conviction. Since it was a component of the armed robbery incident, only the conviction for armed robbery should be affirmed.

For the reasons stated, therefore, the judgment and sentence of the Circuit Court of Peoria County on the armed robbery conviction is affirmed, but the judgment of conviction and sentence on the charge of armed violence is reversed.

Affirmed in part and reversed in part.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I believe the defendant, William Gary, was denied a fair trial because he did not receive effective assistance of counsel. I therefore respectfully disagree with the contrary conclusion reached by my colleagues.

The majority opinion fully sets forth the pertinent facts as well as the applicable legal principles.

Defendant contends he was denied the effective assistance of counsel because for all practical purposes his appointed counsel during closing arguments pleaded him guilty and because his appointed counsel failed to pursue and investigate an allegedly valid theory of defense and allow defendant to testify to establish that defense.

In my opinion *People v. Carter,* 41 Ill. App. 3d 425, 354 N.E.2d 482, and *People v. Redmond,* 50 Ill. 2d 313, 278 N.E.2d 766, in which cases

convictions were reversed because of ineffective assistance of counsel, are persuasive authorities supporting my position that in this case the defendant was denied the effective assistance of counsel because of the final argument of his counsel.

While the language of defense counsel's final argument quoted at length in the majority opinion requests a not guilty verdict on two of the counts, in the same breath it admits the defendant's guilt on the lesser included offenses of reckless conduct and aggravated battery. It does so either by telling the jury that defendant has admitted his guilt to his attorney, by stating that defendant is guilty, or by requesting the jury to bring back guilty verdicts on the lesser included offenses. Without examining the matter further, I note that defense counsel might well have breached his client's privilege of confidentiality by telling the jury of alleged admissions of guilt by his client on two of the charges.

In *People v. Carter*, 41 Ill. App. 3d 425, 354 N.E.2d 482, the court concluded that defendant had been denied effective assistance of counsel primarily because of defense counsel's closing argument. The court found that not only had counsel's summation failed to perform its function of presenting the defense's theory, "but was tantamount to an admission of his client's guilt." Without embarking upon a verbatim comparison between the closing argument in *Carter* and here, suffice it to state that while the language in *Carter* found to constitute an admission of guilt was somewhat obscure and vague, the admission of guilt in the present case is clear and unequivocal. It was tantamount to pleading defendant guilty in open court without any of the safeguards provided by statute or rule to insure that a guilty plea is the result of the defendant's own volition. In addition, *Carter* was tried without a jury whereas the present case was before a jury. Presumably, since a trial judge sitting as a trier of fact has a greater ability to disregard improper statements made during trial than does a jury, it would seem that less prejudice to the defendant was established in *Carter* than here. Nevertheless, the *Carter* court did find defendant had been denied effective assistance of counsel and remanded the cause for a new trial.

In the present case, counsel told the jury that defendant had admitted his guilt to him on two charges, but asked for leniency on the two remaining charges. Yet, the lesser offenses of aggravated assault and reckless conduct arose out of the same conduct as the two greater offenses of armed violence and armed robbery. A jury quite naturally would consider such an admission when reaching a verdict on all four counts. Hence, counsel's closing argument effectively destroyed whatever defense the defendant had to all of the charges. As such, it constituted more than a mere error in judgment or trial strategy.

My colleagues concede that defense counsel did plead the defendant

guilty to the offenses of aggravated assault and reckless conduct. They fail to show from any view of the evidence how the defendant could have been guilty of the lesser offenses without being guilty of the more serious offenses. They characterize the plea of guilty as an appeal for clemency thereby justifying such argument as a matter of strategy or professional judgment. The final argument in the *Carter* case could similarly be considered a plea for leniency. Yet, the *Carter* court reached the conclusion the defendant did not receive the effective assistance of his counsel. In distinguishing *Carter* the majority believes it significant that the defendant here did not testify and claim his innocence, whereas in *Carter,* the defendant's testimony supported a theory of innocence, a theory which his counsel ignored during closing argument. In light of defendant's willingness to go to trial on all charges, as well as the presumption of innocence given every defendant, I believe that just as in *Carter,* the defendant here proclaimed his innocence only to have that position repudiated by his counsel during closing argument.

In *People v. Redmond,* 50 Ill. 2d 313, 278 N.E.2d 766, our supreme court reversed a murder conviction on the ground the defendant had been denied effective assistance of counsel, reasoning that counsel's closing argument was "totally confusing and incoherent" and therefore "meaningless." I believe defense counsel's closing argument in the instant case was confusing, most notably because of the inconsistent positions counsel took between admitting his client's guilt on the two lesser included offenses and urging his innocence on the two greater offenses. The conduct of counsel in this case requires a decision that defendant was denied effective assistance of counsel.

The defendant has also argued he was denied effective assistance of counsel because his counsel failed to pursue and investigate an allegedly valid theory of defense and allow defendant to testify to establish that defense. From the testimony of the defendant given at the sentencing hearing, it appears the defendant claimed he had been cheated at a crap game by the complaining witness. On this appeal defense counsel has devoted a considerable portion of his brief to the argument that the self-help principle to recover gambling losses occurring as the result of cheating is a defense to charges based on such self-help. Consequently, according to the defendant, he should have been advised of this potential defense, given an opportunity to testify about it, and have the jury instructed on the defense.

My colleagues have ignored the self-help issue and I think properly so, because in this regard, the factual basis for evaluating the conduct of trial counsel is outside the record. In other words, whether defense counsel even considered whether such a defense existed or whether he advised defendant about it or whether he advised the defendant not to testify

even if such defense could be proved, are all matters outside the record. I make note of this problem because of the troublesome question which sometimes arises when part of an issue appears to have been urged and argued on a direct appeal when in fact complete resolution of the issue may require other evidence more appropriately presented in a post-conviction proceeding. I make the special observation that the issue relating to the self-help defense and the adequacy of defense counsel's conduct with respect to such defense are not appropriately decided on this direct appeal.