Earl Wayne WILEY,
Petitioner-Appellant,

v.

Dewey SOWDERS, Superintendent,
Kentucky State Reformatory,
Respondent-Appellee.

No. 80–3445.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1981.

Decided April 24, 1981.

Kevin Michael McNally, Asst. Public Advocate, Frankfort, Ky., (Court-appointed), for petitioner-appellant.

Earl Wayne Wiley, pro se.

Steven Beshear, Atty. Gen. of Ky., Michael R. Beiting, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before WEICK and ENGEL, Circuit Judges, and HILLMAN,* District Judge.

DOUGLAS W. HILLMAN, District Judge.

Earl Wiley, petitioner, was indicted by the Henderson County Grand Jury on August 1, 1978, along with his brother, Elmer Wiley, of first degree burglary,[1] theft of

---

* Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

1. KRS § 511.020.

the value of $100 or more[2] and being a persistent felony offender in the second degree.[3] The offenses were allegedly committed on July 13, 1978.

On August 8, 1978, Earl Wiley was arraigned and counsel appointed to represent him. Earl Wiley pled "not guilty." Separate counsel was appointed for Elmer Wiley. Elmer Wiley also pled "not guilty."

The Wileys were tried together on September 20, 1978. The jury found both Earl Wiley and Elmer Wiley guilty of first degree burglary and theft, and sentenced each to 10 and 5 years respectively.[4] At the persistent felony phase of the trial held that evening, the same jury found the Wileys guilty and the first degree burglary charge was enhanced to life imprisonment. Judgment was entered October 2, 1978, sentencing Earl Wiley to life.

The Wileys appealed to the Supreme Court of Kentucky which affirmed their convictions on September 11, 1979. In this habeas corpus petition, Earl Wiley challenges both the conviction and the habitual criminal sentence. The district court denied his petition. We reverse.

In challenging his convictions, Wiley raises several constitutional challenges. Principally, he argues that because his court-appointed lawyer repeatedly admitted his guilt to the jury without his prior consent, he was denied effective counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Our disposition of this issue makes it unnecessary to consider his other constitutional claims. .

At the close of proofs in the first phase of trial, petitioner's counsel presented the closing argument on behalf of both defendants.[5]

Defense counsel's closing argument, apparently a "trial tactic," contained several unequivocal admissions that the defendants were guilty while at the same time attempting to obtain mercy. The following are excerpts from defense counsel's closing argument:

> "Ladies and gentlemen, I think it's very important that you realize what the function of [counsel for Elmer Wiley] and mine is in the case. *We were appointed to represent these two men,*[6] and we are going to represent them to the best of our ability, and that is what I want to talk to you about right now. (Emphasis added.)

2. KRS § 514.030.

3. KRS § 532.080(2).

4. Under Kentucky procedure, the jury, in addition to determining the guilt or innocence of a defendant, also fixes the penalty. Kentucky Criminal Rule 9.84(1). Thereafter, the court imposes sentence. Criminal Rule 11.02.

5. The practice of one attorney making a closing argument on behalf of two defendants, whose interests could well be in conflict, might well in and of itself constitute reversible error. "Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness." *Glasser v. United States*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

6. Although not raised as error, this statement constitutes highly questionable practice. Compare with the conduct of Harold R. Medina, eminent trial attorney and later Circuit Judge of the U. S. Court of Appeals for the Second Circuit. Medina was court-appointed counsel for Anthony Cramer, an alleged German saboteur, charged with treason during World War II. Feeling ran high against Medina and, among other indignities, he was spat on by a spectator. At the close of the government's case, the trial judge asked Medina to stand and then proceeded to praise him highly for his skill and vigor in defending Cramer as assigned counsel without compensation. In response, Medina immediately took exception to the court's remarks as he had not wanted the jury to think that he personally thought Cramer was guilty and was defending him only because he had been assigned by the court to do it. Medina said:

> "May it please your Honor, I have a most distressing and disagreeable task, and that is to object to the fact that you have mentioned that to this jury, and to take exception to your Honor's comment. It is something I do with the most extreme regret, but I honestly feel that my duty requires that I do it. I do not think the jury should have been told that. I have tried to keep it from them myself, and I have not mentioned it." *The Anatomy of Freedom*, Harold R. Medina, Henry Holt and Company, 1959, p. 59.

"Often times when a lawyer gets involved in a case, he gets stars in his eyes and he starts having notions that there may be some way, you know, if I examine this case . . . and I do my homework and I go out and I investigate as much as I can and I interview all the witnesses, that I'll be able to get a man off. That I will be able to prove to a jury that he is not guilty with what they have got him charged with.

"The stars aren't in our eyes in this case, ladies and gentlemen. They never have been. We're all adults. We're all mature thinking human beings . . .

\*    \*    \*    \*    \*    \*

"But as I said, the stars aren't in my eyes in this case. . . . Because unfortunately for these two men that you see here today, *they are guilty. They're guilty as charged* by the Commonwealth's Attorney's office. (Emphasis added.)

"Mr. Walker [the prosecutor] in voir diring you all said, do you understand that the indictment . . . doesn't become a question of fact until I prove beyond a reasonable doubt that they are in fact guilty.

"We have to stand and give him credit for that because, ladies and gentlemen of the jury, *he has proved to you beyond a reasonable doubt that these gentlemen are guilty of this crime.* We don't have stars in our eyes, and we never have. *They're guilty.* (Emphasis added.)

\*    \*    \*    \*    \*    \*

"I couldn't stand up here and argue to you on behalf of Earl Wiley—you know there were no eye witnesses, and I could make the same argument about Elmer Wiley—you know there were no eye witnesses, nobody saw them go in and come out. I'm not that foolish. I'm not that naive. And I know you're not.

"I know, and you know, you're going to give these men time in the penitentiary. And they know it, or they had better know it after they've heard the evidence here today. They're going to the penitentiary. That part's easy *because they're guilty.* I can't stand up here and say they didn't do it, they haven't proven that they did it, I'd be foolish and naive and immature. *Because they did do it.* And the Commonwealth's Attorney's office has proven to you that they have done it. (Emphasis added.)

\*    \*    \*    \*    \*    \*

"I told you before we know they are going to the penitentiary. And they know that they're going to the penitentiary. And you know they're going to the penitentiary.

\*    \*    \*    \*    \*    \*

". . . It's bad, and it's a crime, and you know and I know and they know they are going to the penitentiary . . .

\*    \*    \*    \*    \*    \*

"Ladies and gentlemen, we submit to you that in this case, in this case, that we are here about today the *question of guilt is absolutely clear. Absolutely clear, beyond a question of a doubt.* You know sometimes we stand up and we argue beyond a reasonable doubt. We don't have that argument here today. We don't have that argument here today. I don't think there is a reasonable doubt. I don't think there is a shadow of a doubt that these two men are guilty. (Emphasis added.)

"*We ask that you be a compassionate jury and a merciful jury* within reason because we know good and well as I stand here today that you're going to find these boys guilty. I know you are going to find them guilty. There is no question in my mind about it. There is no question in your mind about it . . . I'd venture to say that there's not a single one of you sitting here who is not going to say that these boys are guilty. I know that. It's going to happen. We know that it is going to happen." (Emphasis added.)

At the close of the proofs of the second phase of trial, counsel for petitioner's brother made the closing argument for both defendants. Again, the predominant theme of this closing argument was that both men were guilty of the burglary and theft with

the added admission that both men had prior convictions. The specific strategy is unclear, particularly when counsel told the jury he was not asking for mercy. Following is an excerpt from the closing argument:

"Your first verdict reflects what [attorney for Earl Wiley] forthrightly told you before you went out to deliberate on it that these men did that. That they definitely did do it. He also told you in first summation here that these men had been, his quote was 'down the road before' . . .

\* \* \* \* \* \*

"Elmer and Earl Wiley have been here before. Each of these men has been previously adjudged guilty of going where they had no right to be, and taking what did not belong to them. That's in the record here.

\* \* \* \* \* \*

"Earl in 1974. Elmer in 1972. Both in McCracken Circuit Court down in Paducah. In the most literary sense of the term, ladies and gentlemen, when that happened in '74 and '72 to him both of these men incurred a debt to society . . . "Elmer Wiley's first debt in '74—excuse me, in '72, and Earl's first one in '74, that that means that you must assess an ultimate toll here today that is far far heavier than anything that you have done before.

\* \* \* \* \* \*

"I submit that you folks had a very very strong suggestion, a very very strong indication before you were sent out the first time garnered from [counsel's] statement that these guys had been down the road before. Well there it is. They have. They have been down the road before and they are still on the same road . . .

\* \* \* \* \* \*

"[Attorney for Earl Wiley] told you if you will recall in the first summation before you ever went out that first time that these men were guilty. That those men were guilty . . .

\* \* \* \* \* \*

"We don't ask you folks for mercy here. I feel there's little enough of that in the world anyway and what there is isn't to be applied in a case like this. These men are guilty. They are guilty of a serious crime. We haven't tried to duck that. We haven't tried to pull any wool over your eyes on that." (Emphasis added.)

## EXHAUSTION OF STATE REMEDIES

Before addressing petitioner's claim of ineffective counsel, a threshold question must be considered. Respondent contends that petitioner has failed to exhaust available state remedies with respect to the ineffective counsel claim and therefore federal habeas relief is inappropriate.

It is, of course, well recognized that a state convicted prisoner must first exhaust his available and adequate state remedies as a condition precedent to federal habeas relief. 28 U.S.C. § 2254(b). *See, Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The exhaustion doctrine springs from considerations of comity between the states and federal government. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The required exhaustion is "designed to give the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971).

■ Exhaustion is satisfied and comity preserved when a federal constitutional claim which arises in a state criminal proceeding is "fairly presented" to the state court for initial determination. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

Under the law of Kentucky, claims of ineffective counsel are initially addressed to the trial court through a post-trial motion under Kentucky Rule of Criminal Procedure 11.42. Petitioner made no such motion. Instead his ineffective counsel claim was first presented on direct appeal to the Kentucky Supreme Court. Nevertheless, the Kentucky Supreme Court has, on occasion,

reviewed unpreserved error to prevent "manifest injustice." *Stone v. Commonwealth*, Ky., 456 S.W.2d 43 (1970). In the past, the state appellate court has both agreed and refused to consider the issue of ineffective assistance of counsel on direct appeal. *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280 (1980); *Nickell v. Commonwealth*, Ky., 565 S.W.2d 145 (1978).

In the present case, the Kentucky Supreme Court received the parties' briefs which contained arguments on the ineffective counsel issue. In addition, the Kentucky Supreme Court took the unusual step of gathering supplemental material relative to this claim. For example, petitioner's trial counsel was permitted to file an amicus brief outlining and defending his trial strategy. In addition, the presiding trial judge submitted an affidavit stating that in his opinion defense counsel were competent and their trial strategy sound. After having received these materials, the state supreme court nevertheless backed off the issue by declining to rule on the ineffective counsel claim stating that absent a post-trial motion, the claim was not preserved for appellate review. Nevertheless, it is clear that the Kentucky Supreme Court, by virtue of its own orders, had before it the position of all parties concerned: Petitioner, the Commonwealth, both trial counsel, and the trial judge. Unquestionably the issue of trial counsel's ineffectiveness was "fairly" presented. Relevant in this regard is the case of *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978). In *Rachel*, the constitutional claim which formed the basis of the habeas petition was not preserved at the trial court. Nevertheless, the petitioner urged the Kentucky Supreme Court to consider the claim on the theory that the unpreserved error resulted in "manifest injustice." The Kentucky Supreme Court did not directly address the issue but rejected the claim as either "(1) without merit or (2) not properly preserved for review." Rachel then filed a petition for a writ of habeas corpus. The Attorney General, as he does here, argued that Rachel was required to return to Kentucky and file a state post-conviction motion before the trial judge. This Court stated:

"We disagree. As already noted, the Kentucky appellate court has already had a fair opportunity to review this issue and to require petitioner to trek through Kentucky's post-conviction relief procedure again is simply to further delay redress of a clear infraction of his constitutional rights ... Furthermore, requiring petitioner to apply for relief again in the Kentucky courts might be an exercise in futility. [Citations and footnotes omitted.]" *Id.*, at 204

Consistent with *Rachel*, we conclude that although petitioner's claim was not preserved before the trial court the claim was fairly presented to the state supreme court. Our opinion that petitioner's claim was fairly presented to the appellate court is further reinforced by the unusual manner in which the claim came before that court. Having submitted an affidavit to the state supreme court, the trial judge effectively foreclosed petitioner's further relief through the conventional post-trial motion. Petitioner's remedy at the trial court level was prejudiced and any further pursuit rendered futile. The exhaustion doctrine does not require pursuit of a state remedy where such a pursuit is clearly futile. *Coley v. Alvis*, 381 F.2d 870 (6th Cir. 1967); *Galtieri v. Wainright*, 582 F.2d 348 (5th Cir. 1978).

Conversely, the fact that the appellate court received this expanded record placed that court in substantially the same position as if the post-trial motion had been made, denied, and incorporated into the appellate record. After receiving the affidavit which foreclosed petitioner's trial court remedies, the appellate court was obligated to decide the ineffective counsel claim on the merits. Petitioner cannot be penalized because the Kentucky Supreme Court refused to decide an issue put squarely before it. Likewise, it is settled that satisfaction of the exhaustion requirement "cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely presented in petitioner's brief in state court." *Smith v. Digmon*,

434 U.S. 332, 333, 98 S.Ct. 597, 598, 54 L.Ed.2d 582 (1978).

Accordingly, we conclude that petitioner has exhausted his state remedies with respect to his ineffective counsel claim and that his claim is appropriately before this court.

## EFFECTIVENESS OF COUNSEL

■ Since *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Sixth Amendment of the United States Constitution has been construed to require that a criminal defendant be afforded effective assistance of counsel.[7] As the Supreme Court noted in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), counsel's performance must be "within the range of competence demanded of attorneys in criminal cases." *Id.*, at 771, 90 S.Ct. at 1449.

In his opinion in *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974) Judge Celebrezze chronicled the history of the law of ineffective counsel within this circuit. The opinion recounts the early "see-saw between a 'reasonably effective assistance of counsel' standard [*United States v. Johnston*, 318 F.2d 288 (6th Cir. 1963)] and a 'farce and mockery' test [*O'Malley v. United States*, 285 F.2d 733 (6th Cir. 1961)]." *Beasley, supra*, at 695. *Beasley* resolved this fluctuation by adopting a standard more probing and more objective than the farce and mockery standard. *Beasley* held the Sixth Amendment to require that "[d]efense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." *Id.*, at 696.

■ The *Beasley* standard of effective counsel incorporates several well-settled principles of law. The requirement that counsel be effective is not a result-oriented standard. Counsel is required to be competent, but not necessarily victorious. The measure of competence is that of the ordinary practitioner in the heat of trial. Counsel's effective assistance is not to be judged from hindsight. *Id.*, at 696. Error-free representation is not required. *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

Any claim alleging counsel's ineffective trial performance requires the court to mediate between the fundamental due process rights of the accused and the need of defense counsel to structure his case. It is not the purpose of this court to second-guess counsel's judgment and trial strategy. As Justice Harlan asserted in his concurring opinion in this case of *Brookhart v. Janis*, 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314 (1966):

"... A lawyer may properly make the tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval."

The welfare of the client, our adversarial system and orderly judicial procedure require that an attorney chart his course of litigation free from undue intervention. It is axiomatic that no two lawyers would ever try the same case in exactly the same manner. The court is particularly sensitive to counsel's need to freely structure his own argument on his client's behalf.

Notwithstanding the strong policy favoring attorney autonomy, ethical, professional and constitutional principles establish limits to counsel's control over a criminal case. Canon 7 (EC 7–24) of the Code of Professional Responsibility of the American Bar Association provides:

"The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact."

■ The decision to plead "guilty" or "not guilty" is a decision reserved solely for

---

7. The Sixth Amendment of the United States Constitution guarantees that "[in] all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

the accused based on his intelligent and voluntary choice. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant's decision to plead guilty cannot be presumed from the plea itself in the context of an otherwise silent record. Instead, the trial court must make an on the record inquiry of the defendant to insure that the defendant's plea is voluntary and intelligent. *Id.*, at 243–244, 89 S.Ct. at 1712–1713. Similarly, an attorney may not admit his client's guilt which is contrary to his client's earlier entered plea of "not guilty" unless the defendant unequivocally understands the consequences of the admission. *Brookhart v. Janis, supra.* Counsel may believe it tactically wise to stipulate to a particular element of a charge or to issues of proof. However, an attorney may not stipulate to facts which amount to the "functional equivalent" of a guilty plea. *United States v. Brown*, 428 F.2d 1100 (D.C.Cir.1970); *Cox v. Hutto*, 589 F.2d 394 (8th Cir. 1979); *Achtien v. Dowd*, 117 F.2d 989 (7th Cir. 1941).

Appellee relies on *Meadows v. Commonwealth*, Ky., 550 S.W.2d 511 (1977), for the proposition that in Kentucky an appeal to the jury's mercy accompanied by a concession of guilt is a permissible trial tactic. That is not a correct reading of *Meadows*. Meadows' counsel, in closing argument, said, "I think he deserves punishment." The Court held this did *not* constitute a plea of guilty, but instead was a "ploy." The Court went on to say:

> "The action of trial counsel in this particular instance may have amounted to a tactical retreat but certainly it did not surrender the cause." *Id.*, at 512.

Here, however, the admissions of Wiley's counsel constituted a surrender of the sword.

In *People v. Carter*, 41 Ill.App.3d 425, 354 N.E.2d 482 (1976), the Appellate Court of Illinois analyzed a factual and legal situation similar to the case at bar. In *Carter*, the defendant was charged with armed robbery. The victim testified that after the defendant lost his money in a dice game, he pulled a gun and stated that this was a stickup. The defendant took the stand and denied robbing the victim or taking a gun to the apartment. Defense counsel, during closing argument, not only stated that his client was not very brilliant in doing what he did, but specifically declined to discuss the factual discrepancy concerning whether the defendant was armed. Reversing the defendant's conviction on the grounds the defendant was denied effective assistance of counsel by defense counsel's closing argument, the court stated:

> "In the instant case, we believe defendant was denied the effective assistance of counsel. Counsel's closing argument is the most notable incident that leads us to this conclusion. A defendant's closing argument permits an answer to the State on the law and the facts and a presentation of the defense theory ... *Here, counsel's closing argument not only failed to perform this function, but was tantamount to an admission of his client's guilt* .... Counsel abdicated his client's position.... Such failures cannot be overlooked as mere errors in judgment or trial strategy." (Citation omitted, emphasis added.) *Id.*, at 485.

Also, in *Commonwealth v. Lane*, 382 A.2d 460 (1978), the Supreme Court of Pennsylvania analyzed a similar situation. The defendant was charged with knowingly receiving stolen property. During closing argument, defense counsel said this to the court, "If he didn't have a record I would ask Your Honor to give him the benefit of the doubt and find him not guilty." Reversing the defendant's conviction because he was denied effective assistance of counsel, the court stated:

> "It is urged counsel was engaged in a strategic trial tactic to obtain leniency for his client. We are not so persuaded. At the particular moment, Lane was challenging his guilt and the issue confronting the court was guilt or innocence. We are unable to see how trial counsel's statement would aid Lane's claim of innocence." *Id.*, at 461.

Throughout the closing arguments, both attorneys for petitioner re-

peatedly stated to the jury that petitioner was "guilty," "guilty as charged," and "guilty beyond reasonable doubt." Counsel's argument represented the precise admission which the defendant rejected in making his earlier plea of "not guilty." Counsel made his remarks with knowledge of petitioner's earlier "not guilty" plea, and without petitioner's consent.[8]

A plea of "not guilty" has at least two dimensions recognizable by this court. First, in pleading "not guilty" a defendant reserves in toto those constitutional rights fundamental to a fair trial. Included in this category of constitutional rights is the accused's right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. *Boykin, supra.* Second, in pleading "not guilty," a defendant exercises his right to make a statement in open court that he intends to hold the government to strict proof beyond a reasonable doubt as to the offense charged. *Byrd v. United States,* 342 F.2d 939 (D.C. Cir. 1965).

Unquestionably, the constitutional right of a criminal defendant to plead "not guilty," or perhaps more accurately not to plead guilty, entails the obligation of his attorney to structure the trial of the case around his client's plea. We, therefore, hold that petitioner was deprived of effective assistance of counsel when his own lawyer admitted his client's guilt, without first obtaining his client's consent to this strategy. In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin, supra.*

Although statements made by attorneys in closing arguments are not evidence, nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his client denied to petitioner his constitutional right to have his guilt or innocence decided by the jury. Petitioner, in pleading not guilty, was entitled to have the issue of his guilt or innocence presented to the jury as an adversarial issue. Counsel's complete concession of petitioner's guilt nullified the adversarial quality of this fundamental issue.

Finally, the question remains open whether an adjudication of ineffective assistance requires a showing that defense counsel's performance adversely affected the trial's outcome and, if such a showing is required, on whom the burden of proving or disproving prejudice falls. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Yelardy,* 567 F.2d 863 (6th Cir. 1978), *cert. denied,* 439 U.S. 842, 99 S.Ct. 133, 58 L.Ed.2d 140 (1978); and *United States v. Beasley, supra.* Under the facts of this case, however, no such claim could seriously be raised. Despite strong circumstantial evidence against petitioner, no witness observed the burglary. No one saw a gun in the hand of either defendant. Yet use of a "deadly weapon" is one of the essential elements under Kentucky law of first degree burglary. Who can be sure that both or either of these brothers would have been convicted had not the jury been told by defendant's own attorney "they're guilty"?

---

8. Petitioner first raised before the Kentucky Supreme Court his assertion that he did not consent to counsel's concession of guilt by his response to the amicus brief submitted by his trial counsel. No claim was ever made by trial counsel in their amicus brief to the Kentucky Supreme Court that their trial strategy was made known or consented to by petitioner. Petitioner reaffirmed his non-consent in his sworn petition for habeas corpus. Respondent did not dispute this issue. The United States Magistrate, in his finding of fact number 11, summarized the facts surrounding trial counsel's confession of guilt without mentioning that petitioner did not consent to this confession. The Magistrate's conclusion of law number 3 noted that no facts were in dispute. Petitioner objected to these findings insofar as they did not reflect his lack of consent to counsel's trial tactic. Petitioner's statement that he did not consent to counsel's trial tactic is not controverted. In any event, an alleged consent in the present case cannot be presumed from a silent trial record. Consent obtained without the protection of an on the record inquiry as required by *Boykin, supra,* is a nullity.

A criminal defendant has a constitutional right to expect during trial that his attorney will, at all times, support him, never desert him, and will perform with reasonable competence and diligence. Defense counsel in this case fell short of this modest standard.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with instructions to grant petitioner's release unless the state initiates procedures to retry him within a reasonable period of time.