UNITED STATES of America ex rel.
Jimmie BUFORD, Plaintiff,

v.

Michael O'LEARY and Neil F.
Hartigan, Defendants.

No. 89 C 3866.

United States District Court,
N.D. Illinois, E.D.

Dec. 20, 1989.

Jimmie Buford, Joliet, Ill., for plaintiff.

Terence Madsen, Rich London, Atty. General's Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner Jimmie Buford, an inmate at the Stateville Correctional Center, seeks habeas relief under 28 U.S.C. § 2254 from his convictions for murder and armed robbery and the imposition of consecutive sentences of 80 years and 10 years imprisonment. For the following reasons, the petition is denied.

### Factual Background [1]

After a bench trial in the Circuit Court of Cook County, Buford and two codefendants, Xavier Young and Alfred Dismukes, were found guilty of murder and armed

---

1. The summary of facts is taken from the unpublished opinion of the Illinois Court of Appeals, the facts set forth in the briefs submitted by the parties to the Illinois Appellate Court, and portions of the trial transcript.

robbery. The state relied primarily on the testimony of two witnesses. David Burns, a store employee, testified at trial that he was working in Winfield Groceries on October 27, 1984, at approximately 7:00 p.m. William Wright, another employee, and Winfield Johnson, the store's owner, were also working. Johnson was at the cash register to the left of the front door, Wright was in the restroom, and Burns was restocking the soda cooler in the middle of the store, to the right of the front door.

A man identified as Xavier Young walked into the store and asked Burns for some meat. Burns directed Young to the meat counter in the rear of the store where Wright waited on him. A second man, identified as petitioner Buford, entered the store and stood at the middle aisle. A third man identified as Alfred Dismukes entered the store and stood behind a customer at the checkout counter.

When the customer left, Buford ran to the front door and locked it. Dismukes then pulled a gun and announced a stick-up. Armed with a pistol, Buford ran behind the counter and told Johnson to open the cash register. Johnson refused. Meanwhile, Dismukes approached Burns at the freezer near the front door and told him to lie face down on the floor. Burns laid down on the floor on his stomach. From this position, Burns could see Buford and Johnson at the checkout. Buford then pushed Johnson down the middle aisle and down onto his stomach. Burns heard Johnson say, "Oh no." Burns then heard a gun shot.

After the shot, Dismukes ordered Burns to open the cash register. As Burns passed the middle aisle, he saw Johnson lying on the floor and Buford going through his belongings. Burns then opened the cash register, and Dismukes took the food stamps and cash. Buford then called out, "Hey, come on," and Young came running from the rear of the store. Buford, Dismukes and Young left the store together. Burns watched them run east on Cullerton and then cross the street. Five weeks later, on November 25, 1984, Burns tentatively identified Buford's photograph in a photo array. On cross-examination, Burns stated that he told the police that the photo of Buford "could be him."

Detective James Antonacci of the Chicago Police Department then testified that on November 25, 1984, Burns had made a tentative identification of Buford from the photo array. Officer Antonacci arrested Buford on December 3, 1984, and advised him of his *Miranda* rights. Buford told him that he had no knowledge of the incident and denied his participation. That same day, however, Burns identified Buford in a lineup. Detective Antonacci testified that, after the identification, Buford confessed to the robbery and murder.

In his statement to Antonacci, Buford said the robbery had been the idea of an employee at Winfield Groceries nicknamed "Kewanee." Kewanee had discussed the idea with Buford and Young. He explained that Johnson was an old man who usually carried about $300 in cash on him and had money in the cash register and under the register drawer. Kewanee advised Buford and Young that the best time to rob the store would be on a Saturday at approximately 7:00 p.m.

Antonacci testified that Buford then detailed the events surrounding the robbery and killing. Buford stated that he left his house on Saturday, October 22, 1984, armed with a .22 caliber gun and a .38 caliber gun. He went to a nearby park where he met Young and Curtis Williams. Dismukes joined them and asked to participate in the robbery. Buford gave Dismukes the .22 caliber gun to use. The four men then drove to Winfield groceries in Williams' car. Dismukes, Young and Buford got out of the car and entered the store. Dismukes went to the back of the store, while Buford and Young remained in the front pretending to shop. When the last customer left, Buford closed the door and ran over to Johnson, grabbed him with one hand and took him to the middle aisle where Buford pushed him to the floor. When Johnson started to struggle, Buford shot him.

Buford further stated that Young and Dismukes were at the cash register while he was struggling with Johnson. The three then left, got into Williams' car and drove away. Buford signed and initialled his post-arrest statement. Detective Antonacci witnessed the signature.[2]

The defense rested without calling any witnesses. During closing arguments, Buford's Attorney Keith Davis argued that Johnson had not been shot in cold blood as the state suggested. Rather, Johnson had been accidentally shot while struggling for the gun. Davis further argued that the evidence showed that there was no intention to hurt anyone, only an intent to rob Johnson. Davis also attacked the strength of the evidence regarding what actually transpired between the gunman and Johnson. He stated that "there were no eyewitnesses to the shooting, other than the testimony which the State produced by its own witnesses, taken from a statement." Davis concluded by stating that it was uncontroverted in this case that there was an accidental shooting of Johnson following a scuffle over a gun. He then asked the court to "enter an appropriate finding, that finding being not guilty of murder."

The court found Buford guilty of murder, armed robbery and unlawful restraint. The state then requested a death penalty hearing.

On November 26, 1985, Davis petitioned the court for leave to withdraw as Buford's attorney on the grounds of a possible conflict of interest. Davis explained that on November 7, 1985, during a status court date, the court had read a letter in aggravation from James Winford Johnson, the victim's son. Defense counsel realized that he had known the victim's son 12 years ago. After he advised Buford of this fact, Buford indicated that he wanted different counsel for the sentencing and death penalty hearing.

After explaining the situation to the court, defense counsel stated that he did not think he should withdraw prior to a decision on his motion for a new trial and arrest of judgment. At the time those motions were filed, he had no knowledge of having known the victim's son. The court then denied Buford's motions for a new trial and arrest of judgment and granted defense counsel's leave to withdraw.

When the case resumed with new counsel, a jury was selected for the bifurcated death penalty hearing. At the first stage of the hearing, the jury found Buford eligible for the death penalty on the grounds that he was at least 18 years old at the time of the offense, and the victim was killed in the course of an armed robbery. At the second stage of the hearing, the jury declined to impose the death penalty. At a later sentencing hearing, the court then sentenced Buford to consecutive terms of 80 years for murder and 10 years for armed robbery.

On appeal, Buford argued for reversal on four grounds. First, he contended that defense counsel Davis failed to act as his advocate, depriving him of his right to effective assistance of counsel. Specifically, Buford argued that defense counsel (1) conceded Buford's guilt during closing argument and raised a legally incorrect defense, (2) failed to question the eyewitness and the police officer who had taken the defendant's incriminating statement and (3) failed to develop an intoxication defense to the murder charges. Second, he argued that he was denied effective assistance where his attorney revealed before sentencing that he had at one time been friendly with the deceased's son. Third, he claimed that the trial court improperly imposed consecutive sentences for murder and armed robbery where the facts evidenced a single course of conduct. Fourth, he argued that the sentence was excessive. On December 30, 1988, a unanimous panel of the Illinois Appellate Court rejected Buford's arguments and affirmed the conviction. *People v. Jimmie Buford,* 178 Ill.App.3d 329, 127 Ill.Dec. 600, 533 N.E.2d 472 (1st Dist.1988).

---

**2.** After Detective Antonacci's testimony, the parties then stipulated that if Linda Amdur was called to testify, she would testify that on December 3, 1984, she was an Assistant State's Attorney assigned to the Felony Review Unit. She would further state that on that date she read Buford his *Miranda* warnings, and Buford then confessed to the murder of Johnson.

The Illinois Supreme Court denied leave to appeal. Having apparently exhausted all available state court remedies in satisfaction of 28 U.S.C. § 2254(b), Buford filed this habeas petition raising the same general issues that he raised on appeal. Although he has not reiterated the specific arguments he had raised with respect to each issue, he has generally stated in his petition that he is asserting all the grounds that he presented in the state courts. We consider each in turn.

### Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), establishes the two-part test for ineffective assistance of counsel claims. To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's performance fell "outside the wide range of professionally competent assistance" and that his defense was prejudiced by the error. *Id.* at 687, 690, 104 S.Ct. at 2062, 2064. Despite the collateral nature of habeas proceedings, the conclusion whether counsel has rendered ineffective assistance of counsel is a mixed question of law and fact which we must review de novo. *Id.* at 698, 104 S.Ct. at 2070. Buford's petition presents both types of ineffective assistance: lack of conflict-free assistance and lack of reasonable performance assistance. *See* Calhoun, *How to Thread the Needle: Toward a Checklist–Based Standard for Evaluating Ineffective Assistance of Counsel Claims*, 76 Geo.L.J. 413 (1988).

### A. Conflict of Interest

■ In order to bring a Sixth Amendment claim based on a conflict of interest, Buford "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Buford has offered no evidence, nor has he made any allegations, either in his petition or in his brief before the Illinois Appellate Court, that his attorney was aware of his past relationship with the victim's son during the trial or prior to the time the post-trial motions were filed. Indeed, the record clearly indicates the contrary. If counsel was unaware that there was a connection between a former acquaintance and the victim, then he could not have been operating under an actual conflict. Absent grounds supporting an actual conflict, we reject Buford's Sixth Amendment conflict of interest contention.

### B. Reasonable Performance

#### 1) *Concession of Guilt*

Buford next contends that his counsel's closing argument amounted to a concession of guilt and therefore his representation was ineffective because it deprived him of his right to have the issue of his guilt or innocence presented to the trier of fact as an adversarial issue. Buford's claim is one that many courts have recognized as stating a Sixth Amendment violation. *See, e.g., Francis v. Spraggins*, 720 F.2d 1190 (11th Cir.1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *Wiley v. Sowders*, 647 F.2d 642 (6th Cir.), *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981); *People v. Hattery*, 109 Ill.2d 449, 94 Ill.Dec. 514, 488 N.E.2d 513 (1985), *cert. denied*, 478 U.S. 1013, 106 S.Ct. 3314, 92 L.Ed.2d 727 (1986). In *Wiley*, the court explained the nature of the claim:

> Unquestionably, the constitutional right of a criminal defendant to plead 'not guilty,' ... entails the obligation of his attorney to structure the trial of the case around his client's plea.... In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such a trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin* [*v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)].

> Although statements made by attorneys in closing arguments are not evidence, nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his client denied to petitioner his constitutional right to have his guilt or innocence presented to the jury as an adversarial issue. Counsel's complete concession of petitioner's guilt nullified

the adversarial quality of this fundamental issue. 647 F.2d at 650.

■ Buford first contends that the following opening remarks, made by his counsel in closing argument, amounted to a repudiation of Buford's plea of not guilty:

Your honor, the State has produced evidence which suggests to this Court that there were two things that happened on this day in question. There was a purposeful robbery of the grocery store, and there was an accidental shooting of Mr. Johnson.

We agree with the analysis by Illinois Appellate Court on this first contention. The court found that defense counsel's use of the word "suggests" clearly indicated that counsel was merely reiterating what the State was suggesting by its evidence, and "[b]y restating the State's theory, defense counsel neither adopted nor admitted to its validity." At 178 Ill.App.3d at 334, 127 Ill.Dec. at 604, 533 N.E.2d at 476.

■ Buford's next contention centers on the remainder of defense counsel's closing argument, in which counsel exclusively developed the defense that the prosecution's evidence established only that the shooting of Johnson had been accidental. Buford maintains that this defense was legally incorrect because accident is not a defense to the charge of felony murder. In making its finding on this argument, the Illinois Appellate Court observed that, in addition to the charge of felony murder, Buford had also been charged with two counts of intentional murder, to which accident is a proper defense. The court concluded that, in light of the strong evidence, including Buford's confession, that Buford participated in the armed robbery, defense counsel's decision to argue that the shooting had been an accident was one of effective trial strategy or tactics, which cannot support a claim of ineffective assistance. *Id.* at 336, 127 Ill. Dec. at 605, 533 N.E.2d at 477. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

While we agree with that analysis as far as it goes, we believe the Illinois Appellate Court failed to adequately consider the main thrust of Buford's contention-namely, that the defense of accident was legally incorrect because it could not have resulted in an acquittal. In other words, if in executing the otherwise sound trial strategy of arguing for a lesser offense, defense counsel had also expressly abandoned all grounds for an acquittal without his client's permission, then Buford may still have been deprived of his right to have his innocence adversarially tested. *See, e.g., Francis v. Spraggins,* 720 F.2d 1190, 1194–95 (11th Cir.1983); *Wiley,* 647 F.2d at 648–51; *People v. Chandler,* 129 Ill.2d 233, 135 Ill.Dec. 543, 546–49, 543 N.E.2d 1290, 1293–96 (1989); *Hattery,* 109 Ill.2d at 464, 94 Ill.Dec. at 519–21, 488 N.E.2d at 518–20. Although the Illinois Appellate Court favorably reviewed defense counsels' performance in developing an identification defense during the course of the trial, the court did not directly address the question whether defense counsel effectively abandoned that defense in his closing argument.

Our concern with respect to that question centers on the appellate court's summary of defense counsel's closing argument. The court stated:

During closing arguments, defense counsel argued that *defendant* had not shot Johnson in cold blood as the State suggested. Rather, Johnson had been accidentally shot while he and *defendant* were struggling for the gun. Defense counsel further stated that *defendant* never intended to hurt anyone. He had only intended to rob Johnson. *Buford,* 178 Ill.App.3d at 333, 127 Ill.Dec. at 603, 533 N.E.2d at 475 (emphasis added).

This summary gives the impression that counsel actually did expressly concede Buford's participation in the robbery in favor of an argument seeking a finding on a lesser offense. Were we to rely on this summary, we might have been inclined to disagree with the Illinois Appellate Court's disposition of Buford's concession of guilt argument. However, we have carefully reviewed the transcript of defense counsel's closing argument and find that, in fact, the closing was much more benign than the appellate court's summary would indicate.

Our review of defense counsel's closing argument reveals no express concession of guilt, and nothing to support Buford's contention that his lawyer had abandoned him. Indeed, counsel did a commendable job of balancing his efforts to do everything within reason and ethics to secure an acquittal for his client, while fulfilling his additional obligation to Buford to secure the most favorable outcome in the event the grounds for acquittal were not accepted by the trier of fact. To this end, Davis developed a two-tier line of defense. First, he took reasonable steps to challenge the eyewitness identification testimony relating to Buford's presence at the crime scene and he did all that he could during the course of the trial to discredit the reliability of Buford's confession about which the officer and assistant state's attorney testified. Second, he proceeded with the alternative theory that even if the court chose to credit the prosecution's evidence on the issue of Buford's presence at the crime scene, the evidence nevertheless failed to show that the killing took place under circumstances warranting a conviction for first degree murder.

During his closing argument, defense counsel carefully avoided making any reference to Buford when speaking about the prosecution's evidence, and he credited the testimony regarding Buford's confession only to the extent it showed that the killing had been accidental. Although he did not explicitly set out his alternative theories in his closing, tactically, defense counsel may have felt it wise to leave the identification issue alone and focus on the accident defense. Nevertheless, the fact that he did not directly discuss the identification defense did not eliminate it as a central trial issue. *See Wiley*, 647 F.2d at 649 (recognizing a distinction between a statement which constitutes a tactical retreat, and one which amounts to a "surrender of the sword"). Indeed, in its findings the court specifically addressed the challenges made by defense counsel at trial to the evidence regarding Buford's role in the armed robbery. Thus, it is evident that from the trier of fact's perspective defense counsel did not abandon Buford's case for acquittal.

We recognize that in fashioning his argument regarding the accident defense, counsel was forced to lend some credence to the substance of Buford's confession. Thus, his argument might be considered to at least have implied that Buford was guilty of the armed robbery. We do not believe, however, that this aspect of defense counsel's trial strategy, when viewed in the context of his overall approach in this case, and in light of the evidence against Buford, prejudiced Buford's chances of securing an acquittal. And we do not believe that counsel's deft handling of the confession implicated Buford's guilt in any manner sufficient to have rendered the proceeding fundamentally unfair. *See, e.g., U.S. v. Harris*, 761 F.2d 394 (7th Cir.1985) (viewed in the context of the entire closing argument, counsel's comments regarding the potential lack of veracity of his client's testimony were not tantamount to a prejudicial admission of guilt); *Messer v. Kemp*, 760 F.2d 1080 (11th Cir.1985) ("If guilt were to some degree implied in what [defense counsel] said, it was weak implication at best, and arguably unavoidable in light of the overwhelming evidence and stated trial strategy."); *Chavez v. Pulley*, 623 F.Supp. 672 (D.C.Cal.1985).

#### 2) *Other Grounds*

Buford contends that defense counsel was ineffective in three other respects. He challenges defense counsel's failure to cross examine the eyewitness, Burns, regarding his observations during the robbery. He further contends that defense counsel erred in failing to develop the defenses that Buford's confession was the result of physical intimidation and that Buford had been intoxicated at the time of the offense. We fully agree with the Illinois Appellate Court's consideration of these issues. Accordingly, we reject Buford's ineffective assistance of counsel claim on these issues as well.

#### Sentencing

■ Finally, Buford has challenged the trial judge's sentencing decision as a denial

of due process.[3] To support this claim, Buford's petition relies on the grounds he raised in the state courts. In his state court appeal, however, Buford did not argue that the imposition of consecutive sentences and the alleged excessiveness of the overall sentence violated the Constitution or any law of the United States. "The failure of a person convicted in state court to raise a federal claim on his state appeal is a procedural default which bars the claim from being considered on federal habeas unless the person can show 'cause and prejudice.'" *Mikel v. Thieret*, 887 F.2d 733, 737 (7th Cir.1989) (citations omitted). Buford has not attempted any showing of cause and prejudice. He had every opportunity, but failed to raise the constitutional issue on appeal.

■ Furthermore, even if he had presented a due process challenge to the sentencing decision in the state courts, and the issue was now properly before us, Buford's claim would fail nonetheless. Buford has indicated that his petition is based on the same arguments he raised in his state court appeal. There, Buford attacked the imposition of a consecutive sentence only on the ground that the trial court had incorrectly applied state law to the facts of the case. Buford also asserted only a state law basis for reducing the sentence on the ground that it was excessive. "A writ of habeas corpus will not be issued on the basis of a perceived error of state law." *Jones v. Thieret*, 846 F.2d 457 (7th Cir. 1988) (quoting *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984)). Buford has pointed to no other error in the sentencing which might implicate constitutional concerns. Therefore, we conclude that Buford's due process claim is without merit.

3. Regarding both of his challenges to the sentencing, the two pertinent paragraphs of Buford's petition open with the words "Petitioner was denied due process of law as guaranteed by the Sixth Amendment...." The paragraph which contests the imposition of the consecutive sentence closes with the assertion that the trial judge's actions "failed to comport with due process." And the following paragraph, closed with

Conclusion

The petition for habeas corpus is denied. It is so ordered.

the assertion that the extended term, consecutive sentence was "excessive, and otherwise failed to comport with the Fourteenth Amendment...." Because the Sixth Amendment is irrelevant to the crux of Buford's claim regarding sentencing, we will consider these claims only in the context of the requisites of due process.