685 So.2d 1130 (1996)
STATE of Louisiana, Appellee
v.
Adrian LEWIS, Appellant.
No. 28973-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Indigent Defender Board by Kurt J. Goins, New Orleans and Richard E. Hiller, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Theresa H. Bloomfield,, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
*1131 Before NORRIS, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Adrian Lewis appeals his conviction for Second Degree Murder, a violation of La. R.S. 14:30. A jury found Lewis guilty, and the trial court imposed the mandatory sentence of life without benefit of probation, parole or suspension of sentence. Lewis urges two assignments of error. For the following reasons, we affirm the conviction and sentence of Lewis.

FACTS
On February 11, 1995, between 7:15 and 7:30 p.m., neighbors of Anthony Jefferson, resident of apartment # 2902 in the Foxborough Cove Apartments in Shreveport, Louisiana, heard a loud noise which sounded like a struggle or fight coming from Jefferson's apartment. Witnesses then heard the door of the apartment open and Jefferson yell "Help, help me" or "Call the police, Call 911." Some witnesses also heard another voice say "No, you don't" or "Come back here" before the door of the apartment was slammed closed. At least three witnesses called 911.
Witnesses standing outside the complex directed officers, who responded to the 911 call, to Jefferson's apartment. When the four patrol officers arrived on the scene, two approached the front of the apartment and two went to the back of the building. When the officers reached the back of the apartment, they illuminated the glass door of the apartment with their flashlights and saw a black male, later identified as Adrian Lewis, attempt to open the door. At the same time, the officers who approached the front of the apartment noticed blood on the handrails, floor and walls outside of the apartment door. The officers entered through the unlocked door and discovered a black male, later identified as Anthony Jefferson, lying face down on the floor covered with blood, clad only in jeans which were pushed down past his buttocks. Those officers also observed Lewis attempting to exit the apartment through the back door. As Lewis tried to open the sliding glass door, an officer ordered Lewis to stop. Lewis then put his hands up, sat down in a chair near the door, and was apprehended by police officers. After securing the scene, the officers called detectives. The officer who searched Lewis at the scene found a black RCC beeper and a key ring with a key to a BMW.
At the police station, after being advised that he was under arrest for second degree murder, Lewis gave a voluntary statement admitting to hitting Jefferson in the head with a lamp. Lewis claimed he acted in self defense as Jefferson had tried to seduce him. Lewis did not present witnesses or testify during the trial.

DISCUSSION
Assignment of Error # 1:
The trial court erred in denying Lewis's Motion for a New Trial.
Assignment of Error # 2:
The trial court erred by denying Lewis's Motion for Post Verdict Judgment of Acquittal.
Lewis concurrently argues two assignments of error, essentially asserting that the state's evidence was insufficient to convict Lewis of second degree murder. Lewis alleges he killed Jefferson during the heat of a confrontation with Jefferson after being provoked by Jefferson's homosexual advances. Thus, he could only be convicted of manslaughter but not second degree murder.
The state contends that the evidence presented to the jury in this instance provided sufficient facts for the jury to find Lewis guilty of second degree murder.
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir. 6/22/94), 639 So.2d 391, citing Tibbs v. Florida, *1132 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Lewis's argument is based on whether the evidence was sufficient to a support a conviction for second degree murder, an issue properly raised in the trial court by a motion for postverdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. See also State v. Korman, supra.
Lewis did properly file a motion for postverdict judgment of acquittal. La.C.Cr.P. art. 821 provides that a motion for postverdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992). La. C.Cr.P. art. 821 codifies the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The trial court did not err in denying Lewis's motions as the evidence presented was sufficient to convict Lewis of second degree murder.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Lewis was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion (cites omitted). State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992).
In order to convict Lewis of second degree murder the state had to prove beyond a reasonable doubt that (1) Lewis killed a human being, (2) when the offender had a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Thompson, 27,512 (La.App.2d Cir. 12/6/95), 665 So.2d 643.
Lewis does not contend that he did not kill Jefferson; however, he alleges the circumstances of the killing were mitigated in such a manner that the killing was manslaughter.
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La. R.S. 14:31 A(1).
"Sudden passion" or "heat of blood" immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection are not elements of the crime of manslaughter. They are mitigatory facts in the nature of a defense that exhibits a degree of culpability less than that present when homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986); State v. Ruff, 504 So.2d 72 (La.App. 2d Cir. 1987).
Therefore, a defendant who establishes by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" would be guilty of manslaughter. Where such proof is sufficient, a second degree murder verdict is inappropriate. State v. Lombard, supra; State v. Ruff, supra. In reviewing a defendant's claim that he met that *1133 burden, the appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigatory factors had not been established by a preponderance. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272; State v. Lombard, supra.
Upon evaluation under the Lombard rule, the evidence does not establish by a by a preponderance of the evidence that Lewis acted in "sudden passion" or "heat of blood." In his initial statement to police, Lewis stated he met Jefferson about one month prior to the incident. Jefferson stopped him as he was walking home from his girlfriend's home one night. Jefferson offered him a ride which he accepted. The pair traveled to Jefferson's apartment where they talked and drank cokes. When Jefferson drove Lewis home, Jefferson gave Lewis $70.00 and told him if he needed anything to give him (Jefferson) a call.
On the night of the instant offense, Lewis called Jefferson because he needed money to buy a birthday and a Valentine's Day present for his girlfriend. Jefferson agreed to pick Lewis up at his house. The pair drove to Jefferson's apartment where they talked and Jefferson offered Lewis a drink (coke). Shortly thereafter, Jefferson began making advances toward Lewis saying that he knew what type of person Lewis was and that he knew Lewis wanted him. Lewis alleges he attempted to fend off Jefferson when Jefferson hit him in the eye causing a cut. Lewis then stated that he went into some type of rage and grabbed a lamp with which he beat Jefferson until Jefferson did not move. During his statement, Lewis alleged that he killed Jefferson in self defense, but at trial he merely argued that he killed Lewis during a fight which was precipitated by Jefferson's homosexual advances.
While giving his initial statement to police, Lewis denied knowing that Jefferson was a homosexual prior to his advances, and Lewis denied having sex with Jefferson.
Evidence presented during trial showed condoms were found out on a dining room table. Analysis of Lewis's boxer shorts and jeans revealed his semen on the items. Additionally, Jefferson was found clad only in a pair of jeans which were down around his buttocks. Also, evidence was presented to show that Lewis did not have his shirt on during at least part of the struggle because blood stains were found on his stomach area. This evidence was sufficient to show that Lewis may have engaged in some type of sexual conduct while he was in Jefferson's apartment despite his assertions to the contrary in his statement to police. Considering all evidence in its totality, it would be reasonable for the trier of fact to conclude Jefferson's sexual advances were not sufficient to mitigate Lewis's intentions to kill Jefferson as necessary for a charge of manslaughter.
In his argument, Lewis contends that the unwanted sexual advances of Jefferson and his attempts to seduce Lewis caused Lewis to fight for his life. To the contrary, the evidence showed Lewis did intend to kill Jefferson. By Lewis's own admission, he hit Jefferson until he did not move again. Also, testimony of witnesses showed that they heard the door of the apartment opening and heard the voice of Jefferson cry out for help. Another unidentified voice was heard saying "get back here, or no you don't" or words to that effect. From these facts, a reasonable trier of fact could infer that Jefferson's attempts to end the fight were thwarted by Lewis.
During his recorded statement, in furtherance of his claim that he was not the aggressor in the incident, Lewis stated that he had placed a call to 911 immediately after he beat Jefferson until he did not move but that he decided to hang up after realizing he was unsure what would happen to him. Sharon Abbott, a supervisor in the department that handles 911 calls, testified that all 911 calls are recorded, including hang-ups. Ms. Abbott testified that on the night and during the time frame of the incident, operators received three calls from Foxborough Cove apartments. However, none of the calls originated from Jefferson's apartment. The daily printout of the 911 calls for February 11, 1995, which was admitted into evidence, further indicates that three calls from Foxborough Cove apartments were not made from Jefferson's apartment.
*1134 Further, while Lewis suffered minor injuries [cut above left eye, scratches on his neck, and cuts on his knuckles], Jefferson, who suffered multiple injuries, received two major wounds, either of which would have been fatal. Dr. Brenda Reames testified that Jefferson suffered a fractured skull as a result of blunt head trauma and a stab wound to the chest which entered Jefferson's heart causing blood loss and the inability of the heart to pump blood. In his statement to police, which was admitted into evidence, Lewis admitted that he repeatedly hit Jefferson with a lamp until he did not move and that he did so because he could not otherwise escape for he feared Jefferson would attack him if he attempted to open the door of the apartment. During his statement, Lewis did not mention having stabbed Jefferson.
Though no evidence was admitted as to which fatal wound was inflicted first, Dr. Reames did testify that the stab wound was a straight "in and out" wound, meaning there was no variance to the left or right, but the instrument went straight in and out. Dr. Reames stated this type of wound was consistent with Jefferson lying on his back with the perpetrator bent over him at the time the wound was inflicted. On cross, Dr. Reames stated that the wound could have been inflicted as both parties were standing but both individuals would have to be moving in the same direction at the same speed. The more likely scenario being Jefferson lying on his back as he was stabbed by someone bent over him.
Sergeant Mark Rogers of the Shreveport Police Department crime scene investigation unit testified about the crime scene and the evidence that was gathered. With regard to the blood at the front door and outside the apartment, Sergeant Rogers eliminated Lewis as the source of the blood found. This testimony directly contradicts Lewis' statement that he, and not Jefferson, was the source of the blood. Lewis went on to say Jefferson had not been outside of the apartment during the fight. Sergeant Rogers testified that the clothes had more bloodstains which was not consistent with the amount of blood found on the shoes and would infer that Lewis was not wearing the tennis shoes at the time his clothes were bloodstained. This evidence is corroborated by Brenda Taylor, Jefferson's sister's, who testified that she found a pair of bloody tennis shoes which did not belong to her brother hidden in his closet. She also identified the tennis shoes Lewis was wearing at the time he was arrested as belonging to her brother.
In further contradiction of Lewis's claim, circumstantial evidence presented showed that Lewis took time to dress himself and change his bloody tennis shoes prior to attempting to leave the apartment. Lewis's bloody tennis shoes were found in Jefferson's closet under other shoes and clothes. Lewis was seen looking out of the window of the apartment as police arrived on the scene, and as he was searched, Lewis was found to be in possession of Jefferson's property. During the trial, the officer who initially searched Lewis identified the beeper and a picture of the BMW keys as the ones he found on Lewis at the time of the search. Ms. Taylor identified the same items as belonging to her brother.
We find that the evidence presented was sufficient to establish Adrian Lewis committed second degree murder of Anthony Jefferson, and that defendant failed to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood."

DECREE
For the foregoing reasons, we affirm the conviction and sentence of Adrian Lewis.
AFFIRMED.