706 So.2d 578 (1998)
STATE of Louisiana, Appellee,
v.
Grover L. ARNOLD, Appellant.
No. 30282-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
*580 Geary S. Aycock, West Monroe, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, W. Stanley Lockard, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before HIGHTOWER, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
Following a volatile domestic confrontation, the defendant, Grover L. Arnold, was charged in the murder of his girl friend's brother and the attempted murder of her sister. After a bench trial, he was convicted as charged of second degree murder, attempted second degree murder and possession of a firearm by a convicted felon. The trial court sentenced him to serve life imprisonment at hard labor without benefits for the murder, 10 years imprisonment at hard labor for the attempted murder, and 10 years imprisonment at hard labor without benefits for possession of a firearm. The trial court imposed the sentences concurrently. The defendant appealed. For the reasons set forth below, the defendant's murder convictions *581 are vacated and the case remanded for further proceedings. Also, his firearm conviction is reversed and remanded.

FACTS
The defendant's girlfriend, Jackie Hines, lived at a house on Ascot Street in Shreveport; on occasion, the defendant resided with her. The couple had two young children. However, in early 1995, they were experiencing serious difficulty in their relationship and were on the verge of breaking up.
On March 16, 1995, Jackie was supposed to pick up the defendant from the cosmetology school he attended. However, she called the defendant and told him that she would not be able to pick him up that evening. In the event the defendant asked about her whereabouts, she instructed her sister Wanda Hines to tell him she was going to visit her oldest child's school. In actuality, Jackie went to Minden to see another man.
That evening Wanda and Latasha Washington, Jackie's cousin, were present at Jackie's Ascot Street residence. The women were preparing food and babysitting the children pending Jackie's return. At about 7:00 p.m., the defendant called and asked where Jackie was; Wanda said she didn't know. At about 10:00 p.m., the defendant arrived at the house and again asked where Jackie was. Wanda again told the defendant that she did not know.
The defendant and Wanda began to argue. The defendant told Wanda that he did not want her to be around the children. During the course of this exchange, the defendant made several vulgar statements to Wanda. Wanda said that she did not threaten the defendant but testified that the defendant told the women that he was going to "handle" Jackie and Wanda when Jackie came home. Ms. Washington heard the defendant say that he was going to hit Jackie when she came home. During the argument, Wanda spoke on the telephone to a family friend, Audrey Frazier, who later came over to the residence. After he and Wanda argued for a while, the defendant went into a bedroom and laid down.
At about 11:30 p.m., Jackie called, and Wanda told her to come home because the defendant was there and was upset. She also told Jackie to pick up her friend LaTonya Williams because she had told the defendant that Jackie was with LaTonya. Shortly thereafter, Jackie came home with LaTonya. Jackie went into the bedroom where the defendant was sleeping and began to argue with him. In the defendant's presence, Wanda then told Jackie several vulgar and unpleasant things that the defendant had said earlier about them and dared the defendant to follow through with his threats to harm them. Jackie testified that Wanda began to curse and yell at the defendant and that she tried to calm Wanda down.
During this confrontation, Jackie and Wanda's brother Andre Hines arrived. Jackie testified that she left the bedroom and that the defendant continued to argue with Wanda. Hearing the argument, Andre went back to the bedroom to see what was going on. When Andre saw that the defendant was arguing with Wanda, he asked the defendant to leave the residence. The witnesses said that Andre did not verbally or physically threaten the defendant up to this point. However, the defendant reached into his vest, and Andre grabbed the defendant's arm and pushed the defendant into a corner. The defendant pulled out a pistol from his vest, and he and Andre struggled. One shot struck the wall; the defendant then shot Andre at least twice. Wanda testified that the defendant was looking at her and yelling "Die, bitch, die!" as he shot Andre.
The women ran screaming from the residence with the defendant in close pursuit. As he ran after them, he yelled "Bitch, I'm going to get you!" and continued to fire his pistol. Wanda said that the defendant appeared to be aiming at her. According to Ms. Frazier and Ms. Williams, the defendant went back into the house and fired a shot. He then returned outside, spotted Wanda, and fired at her again. The defendant did not hit Wanda. Andre had four distinct gunshot wounds (which may have been caused from fewer than four shots) and died as a result of these wounds.
*582 On April 12, 1995, the defendant was indicted for second degree murder, attempted second degree murder, and possession of a firearm by a convicted felon. A second indictment, filed on May 2, 1995, dropped the firearms charge. According to the minutes, the case was originally set for trial on April 22, 1996. On April 15, 1996, defendant's counsel filed a "Motion to Waive Trial By Jury." The motion was signed by counsel but not by the defendant, and the minutes do not reflect that the defendant was present when the motion was filed.
The case was continued, and on November 15, 1996, the prosecutor filed a third indictment which again added the firearms charge. The minutes for that date reflect that the defendant waived formal arraignment and pled not guilty, and that the court informed him that he had the right to a trial by jury but that he could waive that right. The record shows nothing else that indicates that the defendant waived his right to a jury trial on any of the charges. Nevertheless, the defendant had a bench trial, and the instant convictions followed. The judge initially imposed the defendant's attempted murder sentence without benefits but later withdrew this provision because the defendant's crime predated the 1995 without-benefit amendment to La. 14:27(D)(1).
The defendant appealed, asserting three assignments of error.

SUFFICIENCY OF EVIDENCE ON MURDER AND ATTEMPTED MURDER CHARGES
The defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal and/or modification of verdict. In this assignment, he complains only about the evidence pertaining to the murder and attempted murder charges; the absence of evidence on the firearms charge is discussed in another assignment of error. The defendant filed a motion for post verdict judgment of acquittal challenging the sufficiency of the evidence on the murder convictions. The trial court denied this motion along with the defendant's motion for new trial.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir. 4/2/97), 691 So.2d 347, writ denied 97-1203 (La.10/17/97), 701 So.2d 1333.
The state urges in brief that the error pertaining to the absence of evidence of defendant's waiver of his right to trial by jury (the defendant's second assignment of error) should pretermit our consideration of the other issues in this appeal. We disagree. According to the supreme court, an appellate court must decide the issue of sufficiency even when reversing a conviction on the waiver issue. State v. Morris, 615 So.2d 327 (La.1993).
Second degree murder, under La. R.S. 14:30.1(A)(1), is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. A conviction for attempted second degree murder, under La. R.S. 14:27 and 14:30.1, requires proof of the offender's specific intent to kill. State v. Franklin, 95-1876 (La.01/14/97), 686 So.2d 38, 42.
Because the defendant stood over Mr. Hines and shot him at least twice, there is little question that the defendant specifically intended to kill or inflict great bodily harm upon him. Similarly, the defendant chased Wanda Hines while aiming and firing a pistol at her. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, ___ U.S. ___, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). *583 In these respects, the evidence is sufficient to support the convictions.
The defendant argues that he killed Andre Hines in self-defense and also that the evidence showed sufficient provocation to reduce his culpability to, at most, manslaughter and attempted manslaughter. Viewing the evidence in the light most favorable to the prosecution, neither of these contentions has merit.

Self Defense
Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1). A defendant asserting self-defense in a murder case does not have the burden of proof on that issue. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State in Interest of D.S., 29,554 (La.App.2d Cir. 5/7/97), 694 So.2d 565, 566-567.
In brief, the defendant contends that Andre Hines was the aggressor and that he acted only in self-defense to fend off Mr. Hines' attack. However, the testimony presented at trial directly contradicts these assertions. The witnesses universally testified that Mr. Hines did not threaten the defendant and did not have a weapon. Moreover, Mr. Hines was about the same size as the defendant. According to Wanda Hines, when the defendant began to gather his things, apparently conceding to Mr. Hines' repeated requests that the defendant leave the residence,
[The defendant] was backing around here like, saying that he was fixing to leave ... and he had to grab his jacket, shoes, or something, some clothing that he had on the bed, that he was fixing to grab, and he wasAndre was walking with him as he moved. When he said he was fixing to leave, Andre moved to the side.... And as Andre moved to the side, he was movinghe didn't move too far, but he moved and left room for Grover to walk off, because he kept saying that he was fixing to leave.... When Grover Arnold reached into his pocketwhen Andre saw him reach into his pocket, Andre grabbed his arm, and they was going like ... this, and somehow the first shot went off.
From this description it is apparent that the defendant, not Mr. Hines, was the aggressor in this situation. La. R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Mr. Hines' actions were insistent but peaceful; no witness described the sort of aggressive behavior by Mr. Hines that defendant describes in brief. For example, the defendant states in brief that
Grover Arnold told Andre that he did not want to fight him. (Record, P. 490). Nevertheless, Andre wanted Grover Arnold to go outside with him. (Record, p. 525.)
Actually, the witness who talked about "going outside," Audrey Frazier, testified that Mr. Hines asked the defendant "to let's go outside and talk.... Let's go outside. Man, come on, let's go outside and talk." This appears to have been an effort to cool off an increasingly volatile situation and separate the defendant from Wanda, not some sort of challenge to fight as the defendant implies.
In brief, the defendant also asserted that, prior to being rushed by Andre, the defendant kept telling him to "back up off me," but Andre continued to "steadily advance" on the defendant. To the contrary, LaTonya Williams testified:
Q [Prosecutor]: Do you know what made [the defendant] reach into the vest, or why he did so?
A: No. I mean, they weren't having physical contact, or anything like that. They were just, you know, Andre kept saying Grover had made the statement to Andre, he said, aw, man, go on and back up off me. They were standing pretty close to each other. He was like, go on and back up off, because I've been wanting to squab with you anyway, or however it went.

*584 Q: Squab, what does that mean?
A: It's a street term for fight.
....
Q: Okay. What did Andre respond to that?
A: He's like, man, naw, I don't want to fight you. I don't want to fight you. Why don't you just go on and get your stuff and leave.... [The defendant] took [his] jacket off, and he threw the jacket on the bed, and Andre said, no, man, I don't want to fight you; I don't want to fight you. Grover said, man, back up off me. That's when he went into the vest and came up with the gun.
Plainly, Mr. Hines' actions and words were insufficiently threatening to justify the use of deadly force; indeed, the defendant appears to have been the aggressor in this situation. Therefore, his self-defense claim must fail.

Manslaughter
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La. R.S. 14:31(A)(1).
"Sudden passion" or "heat of blood" immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection are not elements of the crime of manslaughter. They are mitigatory facts in the nature of a defense that exhibits a degree of culpability less than that present when homicide is committed without them. State v. Lewis, 28,973 (La. App.2d Cir. 12/11/96), 685 So.2d 1130, 1132-1133, writ denied 97-0122 (La.5/16/97), 693 So.2d 797.
Therefore, a defendant who establishes by a preponderance of the evidence that he acted, with sufficient provocation, in "sudden passion" or "heat of blood" would be guilty of manslaughter. Where such proof is sufficient, a second degree murder verdict is inappropriate. In reviewing a defendant's claim that he met that burden, the appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigatory factors had not been established by a preponderance. Lewis, supra.
Given the testimony above and the general tenor of the events surrounding these killings, the defendant has not shown that the killing of Andre Hines occurred under circumstances which would reduce murder to manslaughter. Mr. Hines was trying to peacefully escort the defendant out of his sister's house when the defendant shot him. Mr. Hines was unarmed, and witnesses testified that the victim did not threaten the defendant. The testimony established that while tense, the situation at the time of the shooting was not sufficiently volatile to provoke a deadly response in any reasonable person. Contrary to the assertions in the defendant's brief, nothing which occurred at the Hines residence amounted to "torment" of the defendant, and there is no evidence that the defendant "was advanced upon by Andre who wanted to fight."
The evidence is sufficient to support the murder convictions, and this assignment of error is without merit.

CONVICTION FOR POSSESSION OF A FIREARM BY A CONVICTED FELON
In this assignment, the defendant contends that the trial court erred in finding that there was sufficiency of evidence to sustain the conviction for a felon in possession of a firearm.
In addition to the murder and attempted murder charges, the defendant was also charged with possession of a firearm by a convicted felon. He entered a plea of not guilty to all of the charges.
When trial commenced, the attorneys both made opening statements. In the beginning of his statement to the court, defense counsel said:
Thank you. May it please the court, counsel, there are three charges pending against Mr. Arnold. We will concede initially that he is, in fact, guilty of possession *585 of a firearm by a convicted felon. That will not be an issue in this case.
Indeed, no evidence was presented to the court regarding the defendant's prior conviction upon which the firearms charge was based.
At the conclusion of the trial, the court stated:
[A]nd with the confession by the defendant as to the remaining charge, possession of a firearm by a convicted felon, the Court finds that the defendant, Grover Arnold, is guilty as charged.
In written reasons for judgment, the court stated:
It was stated by defense counsel that defendant was a convicted felon and illegally in possession of a firearm at the operative time, therefore, the reasons presented herein shall not address this offense.
Although the defendant was present during opening statements and did not openly disagree with his counsel, the record does not show that he expressly agreed with this "strategy."
On appeal, defendant argues that this court must acquit him on the firearm conviction due to the absence of evidence. Again, the state considered this argument pretermitted by the error regarding waiver of jury trial and thus did not argue the matter in brief. However, the Morris case, supra, requires this court to find that the evidence underlying the conviction is sufficient before taking action on the jury trial issue.
To support a conviction of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt possession of a firearm; prior conviction of any enumerated felony within the ten-year statutory time limitation; and general intent to commit the offense. State v. Tatum, 27,301 (La.App.2d Cir. 9/27/95), 661 So.2d 657, 660. Materials included in the state's discovery response show that one Grover Arnold pled guilty to possession of Schedule II narcotics on May 31, 1990. Possession of Schedule II narcotics is a felony-grade violation of the Uniform Controlled Dangerous Substances Law, specifically La. R.S. 40:967(C)(2).
Of course, discovery is not evidence, and the defendant cites the familiar rule that the statements of the lawyers also do not constitute evidence. He cites State v. Bindom, 410 So.2d 749 (La.1982), for the proposition that comments by counsel during opening statement do not amount to a judicial admission or stipulation. In Bindom, the defendant was convicted of theft and argued on appeal that the state failed to negate every reasonable hypothesis of innocence; namely, that he was simply in the company of the thieves and did not himself commit the crime. The state attempted to refute this theory by using certain statements made by defense counsel in his opening statement. The supreme court refused to consider these statements as facts and reversed the defendant's conviction on sufficiency grounds, saying at 410 So.2d at 753:
Defense counsel told the jury in his opening statement that the evidence would show that Gaines [the defendant] was picked up in Baton Rouge by two acquaintances he knew and asked if he wanted to take a ride, that he thought they were going to Avoyelles Parish to see friends of one of the men, that Gaines realized something was wrong and that money had been taken only after leaving the bank, that there was not a whole lot he could have done, and that he was afraid and frightened.
The comments made by the attorney in his opening statement are not evidence, nor do they amount to a judicial admission or stipulation. The comments by defense counsel as to what facts he thought the evidence would establish did not amount to a stipulation of facts or a judicial declaration or admission of facts binding on the defendant or subject to consideration by the jury or by the reviewing appellate court. The asserted facts on which the state relies to infer Gaines' participation in the theft were not established by the evidence presented to the jury and cannot be considered in determining whether Gaines' guilt was established in accordance with the Jackson and Austin standards.
The attorney's comments in Bindom were thus a routine part of opening argument *586 which the state tried to rely upon as evidence when other proof was lacking. The defendant in Bindom did not intend for the comments to serve as an admission. In this case, the character of the statements is entirely different. So far as the record reveals, in this case the defense counsel intended that the court accept the comments in his opening statement as an admission or, as the court put it, a "confession" that the defendant was guilty.
The instant case is thus comparable to Wiley v. Sowders, 647 F.2d 642 (6th Cir.1981), cert. denied sub nom Sowders v. Wiley, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). In the Wiley case, the defendants were charged in state court with burglary and with being habitual offenders. During closing argument, their counsel repeatedly emphasized the defendants' guilt of the charged offenses. However, counsel also asked the jury to be compassionate and merciful. After the defendants were convicted and sentenced (to life imprisonment), one of them sought federal habeas relief on the grounds that he received ineffective assistance of counsel. The sixth circuit agreed and reversed the petitioner's conviction. The court said at 647 F.2d at 650:
Although statements made by attorneys in closing arguments are not evidence, nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his client denied to petitioner his constitutional right to have his guilt or innocence decided by the jury. Petitioner, in pleading not guilty, was entitled to have the issue of his guilt or innocence presented to the jury as an adversarial issue. Counsel's complete concession of petitioner's guilt nullified the adversarial quality of this fundamental issue.
In the Wiley case, defense attorneys' admissions all but entered a plea of guilty for their clients. Likewise, in the present case, counsel's conduct effectively withdrew the defendant's plea of not guilty and entered a plea of guilty.
Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and progeny, a guilty plea cannot be upheld without record evidence that the defendant has knowingly and intelligently waived these rights to jury trial, compulsory process and silence. While statements of counsel do not constitute evidence, what happened at this trial is much more akin to a guilty plea than to a trial where the defendant contests his guilt. The record reflects that the defendant was present in court and said nothing when his attorney stipulated that the defendant was guilty of the offense. Under these circumstances, the defendant is not entitled to short-circuit the state's case and obtain an acquittal by admitting his guilt in opening argument and then relying upon the subsequent absence of proof for acquittal under Jackson v. Virginia, supra. Nevertheless, because there is no evidence that the defendant waived the Boykin trio of rights or agreed to the stipulation of his guilt, this conviction cannot stand.
The defendant's conviction for possession of a firearm by a convicted felon is reversed and remanded, not on sufficiency grounds, but on the grounds that this attempt at a guilty plea was inadequate under Boykin. Unlike an acquittal, such a disposition will not preclude the state from pursuing these charges again.

WAIVER OF RIGHT TO JURY TRIAL
In this assignment of error, the defendant asserts that the trial court erred in failing to properly obtain a waiver of his right to trial by jury.
The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee criminal defendants the right of trial by jury for "serious crimes." Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Similarly, Article 1, § 17 of the Louisiana Constitution stipulates that crimes for which the punishment may be confinement for more than six months must be tried by a jury except when, in noncapital cases, the defendant knowingly and intelligently waives his right to a jury trial. See also La.C.Cr.P. arts. 780 and 782. The waiver of the right to trial by jury is never presumed from a silent record. State v. Clay, 623 So.2d 211, 217 (La.App. 2d Cir.1993); State v. Burton, 540 So.2d 1023, 1025 (La.App. 2d Cir.1989). *587 Each of the crimes with which the defendant was charged carried the right to a trial by jury.
The record is entirely silent regarding the defendant's waiver of the right to trial by jury on the charge of possession of a firearm by a convicted felon. The motion to waive jury trial was filed when the only pending charges against the defendant were the murder and attempted murder charges, and the motion specifically refers only to those charges.
As the defendant points out, he was recharged and rearraigned after the purported waiver of jury trial on the earlier indictment, and, according to the minutes, at this last arraignment, the trial judge informed the defendant that he had the right to waive trial by jury without mention of the earlier waiver. The minutes make no reference to a waiver entered at the final arraignment. Therefore, the written waiver in the record would not seem to apply to the indictment on which the defendant was tried.
Assuming arguendo that the written motion did apply to the murder charges in the third indictment, the consensus in the jurisprudence is that the "knowing and intelligent" standard is not satisfied by this attorney-filed motion alone.
Waiver of trial by jury need not be made in the same colloquial manner as a guilty plea. As the supreme court said in State v. Kahey, 436 So.2d 475, 486 (La.1983):
[W]hen the defendant waives his right to a jury trial by opting for a judge trial, as opposed to when he waives all trial rights by pleading guilty, we have expressly rejected several times a rule which would require the trial judge to personally inform the defendant of his right to a jury trial. State v. Phillips, 365 So.2d 1304 (La.1978); State v. Muller, [351 So.2d 143 (La.1977) ]. And we have even approved a waiver made by a defense attorney in a defendant's presence in open court. State v. Phillips, supra.

Accord, see State v. Houston, 94-592 (La. App. 5th Cir.12/14/94), 648 So.2d 948, 950; State v. King, 602 So.2d 121, 123 (La.App. 4th Cir.1992), writ denied, 608 So.2d 192 (La.1992).
However, a case without indicia that the defendant himself intended to waive trial by jury has a potentially reversible defect. The fourth circuit has said:
The Supreme Court has refused to adopt an absolute rule that no jury waiver can be effective unless the record reflects that the accused was personally informed by the judge of his right to a jury trial. State v. Phillips, 365 So.2d 1304 (La.1978), cert. denied 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Nevertheless, in State v. Wilson, 437 So.2d 272 (La.1983), the Supreme Court said that when a defendant waives such a valuable right, the trial judge should advise the defendant of his right to trial by jury and require the defendant to personally waive the right either in writing or by oral statement in open court on the record. A knowing and intelligent waiver of that right will not be presumed from a silent record.
State v. Page, 541 So.2d 409, 410 (La.App. 4th Cir.1989), writ denied, 548 So.2d 323 (La.1989) (emphasis in original). The third circuit described the appropriate procedure this way:
One who is entitled to a jury trial may knowingly and intelligently waive that right and receive a trial by judge; however, such waiver shall not be presumed in the absence of a contemporaneous record setting forth the articulated apprisal of that right followed by a knowingly [sic] and intelligent waiver by the accused.
State v. Smith, 447 So.2d 4, 5 (La.App. 3rd Cir.1984).
In the Muller case, cited in Kahey, the supreme court affirmed a lower court's reversal of a conviction where an attorney waived the defendant's right to a jury trial in the absence of the defendant and the defendant thereafter had a bench trial.
In State v. Morris, 607 So.2d 1000 (La. App. 3rd Cir.1992)[1], writ granted and reversed *588 on other grounds, 615 So.2d 327 (La. 1993), the third circuit reversed a defendant's conviction in a case where the record, as here, contained only an attorney-filed motion to waive trial by jury. The court distinguished this case from other cases where attorney-filed motions to waive jury trial were found sufficient on the grounds that, in those cases, the record reflected the defendant's presence in court at the time the motion was made. In the Clay case, supra, this court recognized that a waiver of trial by jury is likely to be effective whenever it is made by the defendant personally.
The record clearly contains no evidence that the defendant waived his right to a trial by jury on the firearms charge. Furthermore, the record in this case contains insufficient evidence that the defendant knowingly and intelligently waived a jury trial on the murder charges. He was not present in court when the waiver motion was filed on the second indictment. The minutes for the third indictment reflect that the judge informed him that he had the right to waive trial by jury on these charges. No other information on this issue is present in the record.
The defendant requests that we reverse his convictions due to this error. However, in its brief, the state requests that we instead remand the case for an evidentiary hearing, a procedure utilized by the first circuit on several occasions. See State v. Talley, 572 So.2d 230 (La.App. 1st Cir.1990); State v. Cappel, 525 So.2d 335 (La.App. 1st Cir.1988), writ denied, 531 So.2d 468 (La.1988); State v. Goza, 467 So.2d 24 (La.App. 1st Cir.1985); State v. Bissett, 451 So.2d 181 (La.App. 1st Cir.1984). However, see the dissent in State v. James, 94-720 (La.App. 5th Cir. 5/30/95), 656 So.2d 746, wherein the majority elected to remand a case for an evidentiary hearing.
Based on the record before us, which contains some evidence that the defendant sought to waive his right to jury trial on the murder charges, we find that the interests of justice would best be served by remanding for an evidentiary hearing on the issue of whether the defendant waived his right to a jury trial on the murder and attempted murder charges. Our reversal of the firearms conviction on inadequate Boykin grounds pretermits a disposition of the jury trial waiver issue for that conviction.

CONCLUSION
The defendant's convictions for murder and attempted murder are conditionally vacated and remanded to the trial court for a hearing to determine whether the defendant knowingly and intelligently waived his right to a jury trial. The defendant's conviction for possession of a firearm by a convicted felon is reversed and remanded because of the inadequate procedure surrounding his "guilty plea" at the trial.
MURDER AND ATTEMPTED MURDER CONVICTIONS CONDITIONALLY VACATED AND REMANDED. POSSESSION OF FIREARM BY CONVICTED FELON CONVICTION REVERSED AND REMANDED.
NOTES
[1] This is the appellate decision the supreme court sent back to the court of appeal for consideration of the sufficiency of the evidence; it is discussed earlier in the sufficiency section of this opinion.