Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,257-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RICHARD LEE GILBERT                         Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 21CR04974

Honorable Bernard Scott Leehy, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Ann Herrle-Castillo

ROBERT STEPHEN TEW                   Counsel for Appellee
District Attorney

KALEE MORGAN MOORE
Assistant District Attorney

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

MARCOTTE, J.

This criminal appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Scott Leehy presiding. Defendant, Richard Lee Gilbert ("Gilbert"), was convicted of second-degree murder under La. R.S. 14:30.1. Gilbert was sentenced to life imprisonment, to be served without the benefit of probation, parole, or suspension of sentence. Gilbert now appeals, arguing that there was insufficient evidence to support his conviction and that the trial court erred by not granting his motion to appoint a sanity commission. For the following reasons, we affirm his conviction and sentence.

## FACTS

On September 21, 2021, Gilbert shot Clara Hardwell three times after being told that Ms. Hardwell struck his mother, Shirley Gilbert ("Shirley"), in the head. The altercation between Ms. Hardwell and Shirley was over five dollars that Ms. Hardwell claimed Shirley owed her. Following the shooting, Ms. Hardwell was rushed to the hospital but was pronounced dead upon arrival. Gilbert fled the scene of the crime and hid in an abandoned house, but was eventually arrested by police for the shooting death of Ms. Hardwell.

On December 16, 2021, Gilbert was charged by bill of indictment with the second-degree murder of Ms. Hardwell, in violation of La. R.S. 14:30.1. Gilbert pled not guilty and sought the appointment of a sanity commission.

At the hearing on the motion to appoint a sanity commission, Gilbert's counsel called Sam Dickens, an investigator with the Indigent Defender Board, to testify. Mr. Dickens testified that he interviewed Gilbert on June

4, 2022, and during the interview, Gilbert could answer his questions but often rambled. Mr. Dickens said that as he talked to Gilbert, "the word schizophrenia came up." Mr. Dickens stated that when he pressed Gilbert for more information about his claimed schizophrenia, Gilbert could not tell him how long it had been since he had been diagnosed or even who diagnosed him.

Mr. Dickens said that Gilbert understood he was facing murder charges and a possible life sentence without parole. Mr. Dickens also said that he did not know if an actual doctor had diagnosed Gilbert, or if the condition was just self-reported to health care providers.

The state argued that the defense did not show that Gilbert's alleged schizophrenia caused him to be unable to proceed or mentally incompetent to understand the nature of the charge against him and appreciate its seriousness. The state pointed out that Mr. Dickens' testimony established that on June 4, 2022, Gilbert understood what the penalty and charges against him were. It was the state's position that Gilbert knew the charges against him and had a "complete understanding of the defense that he's asserting." In support of this argument, the state introduced into evidence recordings played for the trial court of phone calls made by Gilbert from the Ouachita Correctional Center ("OCC") to witnesses between September of 2021, and May 23, 2022, in order to show Gilbert's continued awareness of what happened as well as his competency to stand trial.

On June 13, 2022, the trial court denied Gilbert's motion to appoint a sanity commission, noting that it was "convinced that the defense has not met its burden by a preponderance of the evidence that Gilbert was incapable of assisting counsel." The trial court found that the phone calls

2

made by Gilbert from the OCC evidenced his understanding of available defenses and the severity of the charges against him. The trial court further observed that a close review of the medical records showed that the word "schizophrenia" appeared as the result of Gilbert's self-reporting of his alleged condition.

Gilbert sought emergency writs, which were not considered by this court due to being untimely filed. Gilbert sought writs again on June 21, 2022, which this court denied.

Following the empaneling of a 12-member jury, a trial was held July 18-19, 2021, where the following evidence was adduced. Detective Chad Grubbs ("Det. Grubbs") is a detective with the West Monroe Police Department. On September 23, 2021, Det. Grubbs responded to a call that there had been a homicide on the porch of a duplex apartment at 108 Linderman Avenue in West Monroe, Louisiana. Upon arrival, Det. Grubbs ascertained that the porch where the homicide occurred was directly in front of an apartment occupied by Shirley, and that the adjacent apartment was occupied by Shirley's sister, Sheila Gilbert ("Sheila").

Det. Grubbs was shown a series of photographs of the apartments' exterior and porches, and confirmed that they showed what he saw when he arrived at the scene. After inspecting the area where the shooting occurred, Det. Grubbs took statements from Shirley, Sheila, Jesse Jones, and Linda Preston, all of whom he found to be believable. Det. Grubbs said that in his interview with Shirley, she never mentioned anything about her son acting in protection of her when he shot Ms. Hardwell. The recorded statements that Det. Grubbs took from Shirley and Sheila were admitted into evidence and played for the jury.

3

Jesse Jones lived near Shirley and witnessed the immediate aftermath of Ms. Hardwell's murder. He testified that he was riding his bicycle near 108 Linderman Avenue when he heard gunshots. Curious as to what had occurred, Mr. Jones approached the house from where he heard the gunshots and saw Ms. Hardwell lying on the ground near the front porch of the house. Mr. Jones said he saw Gilbert get into the passenger seat of a green truck parked in the driveway, and then speed away. Mr. Jones testified that when he turned Ms. Hardwell over to attempt to render aid to her, he did not see a gun or any weapons on her. Mr. Jones recognized Gilbert because Gilbert had lived with him for a brief period when Gilbert had "no place to go." Mr. Jones identified Gilbert in the courtroom as the same man he saw leaving the scene of the crime that day.

Shirley testified that on September 23, 2021, Ms. Hardwell, whom she referred to as "Bre," entered her duplex apartment at 108 Linderman Avenue and engaged in an altercation over five dollars she claimed Shirley owed her. Shirley said that when she did not produce the money, Ms. Hardwell struck her in the head. Shirley said she then called her sister, Sheila, who lived in the other half of the duplex, for help, and the sisters forced Ms. Hardwell from the house.

When Gilbert arrived, Shirley said she was at her doorway and Ms. Hardwell was outside. Shirley said she then told her son that Ms. Hardwell had hit her. Shirley stated that she and her other sister, Linda Preston, were on a three-way call with 911, relaying information about how Ms. Hardwell had struck her when Gilbert pulled out a gun and shot Ms. Hardwell three times. The audio recording of the chaotic 911 call was admitted into evidence and played for the jury.

4

Sheila lives next door to Shirley in the adjoining duplex apartment. She testified that she was at her sister's apartment when Ms. Hardwell arrived and that Shirley and Ms. Hardwell began arguing over five dollars. Sheila said that Ms. Hardwell was asked to leave Shirley's apartment because she was "knocking stuff over." Gilbert then arrived. Sheila said that Shirley conveyed to Gilbert that Ms. Hardwell had struck her "upside the head." After Sheila returned to her apartment, she said she heard gunshots outside her door, and when she looked out her window, she saw Gilbert with a gun and Ms. Hardwell on the ground.

Linda Preston is Gilbert's aunt and was on the 911 call with Shirley when Ms. Hardwell was shot. Ms. Preston testified that on September 23, 2021, she got a call from her sister, Shirley, informing her that Ms. Hardwell had hit Shirley and "tore up her house." Ms. Preston suggested that the two of them call 911 to deal with the situation. Ms. Preston said she initially called 911 before patching in Shirley for a three-way call. Ms. Preston said that she and Shirley were on the 911 call with police when the shooting occurred.

Dr. Frank Peretti is a forensic pathologist who performed an autopsy on Ms. Hardwell. The parties stipulated that he is an expert in his field. Dr. Peretti testified that Ms. Hardwell was 33 years old, 5'8", and 358 lbs. at the time of her death. He concluded that her cause of death was homicide from three gunshot wounds, one of which led to massive internal bleeding. Dr. Peretti was shown numerous photographs of Ms. Hardwell, all of which he confirmed were the same ones he took in connection with his autopsy. The photographs were admitted into evidence. The state rested. Gilbert

exercised his right to remain silent and elected not to testify in his own defense. The defense rested.

Following deliberation, the jury found Gilbert guilty as charged. The jury was polled and the verdict was unanimous. On September 15, 2022, the trial court sentenced Gilbert to life in prison without benefits. Notably, the trial court did not use the term "hard labor" when sentencing Gilbert. On September 23, 2022, a motion for appeal was filed, and on September 27, 2022, it was granted. This direct appeal followed.

## DISCUSSION

*Sufficiency of the Evidence*

Gilbert asserts that the evidence was insufficient to convict him of second-degree murder. Appellant does not dispute that he shot Ms. Hardwell. However, he argues the evidence established that he committed the offense in sudden passion or heat of blood, warranting the responsive verdict of manslaughter.

Gilbert argues that the evidence established that Ms. Hardwell struck Shirley and ransacked her belongings just before he arrived at his mother's home. Gilbert claims that he only shot Ms. Hardwell after he was told that she struck his mother, and that after being told what had occurred, not enough time had passed to allow his blood to cool.

Gilbert notes that Ms. Hardwell was a large woman, 5'8" and 358 pounds, compared to Shirley's height of under 5' and weight of approximately 100 pounds. Gilbert further notes that his mother had obvious mental and/or emotional problems as evidenced by her inability to call 911 and speak to the operator on her own, needing her sister to make the three-way call, and the difficulty she had with recounting the events when

6

she testified. Gilbert asserts that these factors combined were sufficient to enrage him and deprive him of his self-control and cool reflection such that he should have been convicted of manslaughter rather than second-degree murder. Gilbert requests that this court vacate his conviction and sentence.

The state argues that the evidence was more than sufficient to convict Gilbert of second-degree murder. The state asserts that if Gilbert is allowed reduced culpability in a homicide based on the fact that he was told the victim hit his mother prior to his arrival, "it would make a mockery of the cases in which the manslaughter statute should be applied."

The state argues that even assuming Gilbert is accurate in saying that the killing resulted from being told Ms. Hardwell struck his mother prior to his arrival, that is still not sufficient grounds for a finding of manslaughter. The state asserts that there was no act of violence or assault committed in Gilbert's presence and that his decision to shoot and kill Ms. Hardwell was based on words. The state argues that those are not circumstances sufficient to deprive an average person of self-control or cool reflection. The state further argues that Gilbert's intent to kill can be inferred from the fact that he shot Ms. Hardwell three times.

When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So. 2d 731 (La. 1992). The Louisiana Supreme Court has set forth the following standard of review of the sufficiency of the evidence:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the

light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La. 6/29/01) 796 So. 2d 649, 657 (citing *State v. Captville*, 448 So. 2d 676, 678 (La. 1984)).

*State v. Brown*, 03-0897, p. 22 (La. 4/12/05), 907 So. 2d 1, 18, *cert. denied*, 547 U.S. 1022, 126 S. Ct. 1569, L. Ed. 2d 305 (2006).

Relevant to this case, second-degree murder is "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries. *State v. Bull*, 53,470 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1175, *writ denied*, 20-00797 (La. 12/22/20), 307 So. 3d 1040.

La. R.S. 14:31(A)(1) states that manslaughter is:

A homicide which would be murder under ... Article 30.1 (second-degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

A defendant who claims provocation as a means of reducing murder to manslaughter bears the burden of proving these elements by a preponderance of the evidence. *State v. McGee*, 51,977 (La. App. 2 Cir. 4/3/19), 316 So. 3d 1196, *writ denied*, 19-00761 (La. 11/19/19), 282 So. 3d

8

1066. Provocation and the time for cooling are questions for the jury to determine according to the standard of the average or ordinary person. *Id.*, *citing State v. Leger*, 05-0011 (La. 7/10/06), 936 So. 2d 108, *cert. denied*, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d. 100 (2007).

"Sudden passion" and "heat of blood" which distinguish manslaughter from homicide are not elements of the offense, but mitigatory factors exhibiting a degree of culpability less than is present when the homicide is committed without them. *State v. Tompkins*, 403 So. 2d 644 (La. 1981); *State v. Arnold*, 30,282 (La. App. 2 Cir. 1/21/98), 706 So. 2d 578; *State v. Armstrong,* 32,279 (La. App. 2 Cir. 9/22/99), 743 So. 2d 284, *writ denied*, 99-3151 (La. 4/7/00), 759 So. 2d 92. A defendant who shows by a preponderance of the evidence that these mitigatory factors are present is entitled to the verdict of manslaughter. *State v. Lombard*, 486 So. 2d 106 (La. 1986). However, the defendant is not obligated to establish the factors affirmatively; instead, the jury may infer them from the overall evidence presented. *State v. Jackson*, 34,076 (La. App. 2 Cir. 12/6/00), 774 So. 2d 1046. The reviewing court's function is to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the state, could have found that the mitigatory factors were not established by a preponderance of the evidence. *State v. Lombard, supra.*

Provocative acts held to rise to the level of mitigating conduct involve physical threats or actions on the part of the victim. *State v. Heard*, 22-378 (La. App. 3 Cir. 11/23/22), 353 So. 3d 326, *writ denied*, 22-01829 (La. 4/18/23), 359 So. 3d 508. Mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter. *State v.*

9

*Mitchell*, 39,202 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1257, *writ denied*, 05-0132 (La. 4/29/05), 901 So. 2d 1063.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the state proved the essential elements of second-degree murder. The state presented sufficient evidence to prove that Gilbert killed Ms. Hardwell when he had a specific intent to kill or to inflict great bodily harm. Gilbert shot Ms. Hardwell three times before fleeing the scene of the crime.

Furthermore, any rational trier of fact could have found that the mitigatory factors of "sudden passion" and "heat of blood" were not established by a preponderance of the evidence. Gilbert's claim that words were not what caused him to kill Ms. Hardwell is belied by the fact that Gilbert was told, using words, that Ms. Hardwell hit his mother prior to his arrival. Gilbert did not see anyone strike his mother, because he was not present when the alleged strike occurred. Instead, Gilbert was informed that his mother was struck before he arrived. No act of violence or assault was committed in Gilbert's presence. His decision to shoot and kill Ms. Hardwell was, in fact, based on words.

This court is not convinced that these were circumstances sufficient to deprive an ordinary person of their self-control or cool reflection such that Gilbert should have been convicted of manslaughter rather than second-degree murder. Accordingly, Gilbert's first assignment of error is without merit.

*Sanity Commission*

In Gilbert's second assignment of error, he argues that the trial court erred in denying his request for a sanity commission. Gilbert claims that the

trial court confused the standard for adjudicating competency with the standard for ordering the competency hearing. To receive a competency hearing, Gilbert argues that he needed only to present evidence to cause the judge to have reasonable doubt about his competency. Gilbert alleges that since he was able to show prison and hospital medical records revealing schizophrenia, the trial court should have been alerted to the possibility that he was incompetent and ordered a competency hearing.

Gilbert argues that psychiatric professionals are in the best position to evaluate his competency. Gilbert asserts that this is particularly true in light of his own mental history, the fact that he was not on his medication, and as his trial lawyer noted, displayed delusional aspects in some of his conversations. Gilbert further noted that his trial lawyer requested a competency hearing because Gilbert seemed unable to assist him with the case. For those reasons, Gilbert argues that the trial court abused its discretion in failing to grant the competency hearing.

The state argues that the trial court correctly denied his motion and that there are no grounds to disturb the trial court's exercise of discretion. The state points out that at the hearing on Gilbert's motion to appoint a sanity commission, Gilbert's own witness, Mr. Dickens, testified about how Gilbert clearly understood the charges against him and the penalty if found guilty.

The state also notes that the only evidence offered to support the claim that Gilbert suffered from schizophrenia was unsubstantiated statements made by Gilbert himself. The state asserts that no evidence was offered to show that there had ever been a diagnosis made by a doctor, nor was any

evidence offered to indicate that schizophrenia had negatively impacted Gilbert's cognitive abilities at any point in his past.

Finally, the state points to the evidence it produced at the hearing on the motion to appoint a sanity commission: several recordings taken from the OCC of phone calls made by Gilbert. The state argues that from these recordings, the trial court was able to clearly determine that Gilbert had the capacity to proceed with his trial and assist his counsel in his own defense.

The Fourteenth Amendment's Due Process Clause protects an individual's right not to proceed to trial while legally incompetent. *See Medina v. California*, 505 U.S. 437, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Pursuant to La. C. Cr. P. art. 643, a court shall order a mental examination of a defendant and appoint a sanity commission when it "has reasonable ground to doubt the defendant's mental capacity to proceed." "Reasonable ground" refers "to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the proceedings' significance, nor rationally aid his attorney in his defense." *State v. Anderson*, 06-2987 (La. 9/9/08), 996 So. 2d 973, 992, *cert. denied*, 556 U.S. 1165, 129 S. Ct. 1906, 173 L. Ed. 2d 1057 (2009).

The trial court's decision regarding a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of the decision with which the defendant is faced. A judicial examination of a defendant's competency focuses primarily on whether a defendant understands the nature of the

charge and can appreciate its seriousness. *State v. Odenbaugh*, 10-0268 (La. 12/6/11), 82 So. 3d 215, *cert. denied*, 568 U.S. 829, 133 S. Ct. 410, 184 L. Ed. 2d 51 (2012).

In the exercise of its discretion, the trial court may consider both lay and expert testimony when deciding whether reasonable grounds exist for evaluating a defendant's competency. *Id*. at p. 8, 228. An appellate court owes the trial court's determinations as to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. *Id*. The appointment of a sanity commission is not a perfunctory matter or a ministerial duty of the trial court, and is not guaranteed to every accused in every case. *Id*. Even the fact that a defendant's capacity to proceed is called into question by formal motion does not, for that reason alone, require an order for a mental examination. *Id*. "The ordering of a mental examination as to the defendant's present capacity to proceed rests in the sound discretion of the court. It is not enough that the defense has filed a motion urging the defense, but there must be sufficient evidence to raise a reasonable doubt as to such capacity." *Id.*; La. C. Cr. P. art. 643, Off. Rev. Cmt. (a).

The proper considerations to determine whether a criminal defendant is fully aware of the nature of the proceedings against him include whether he: (1) understands the nature of the charge and can appreciate its seriousness; (2) understands what defenses are available; (3) can distinguish a guilty plea from a not guilty plea and understand the consequences of each; (4) has an awareness of his legal rights; and (5) understands the range of possible verdicts and the consequences of conviction. *State v. Bryant*, 52,743 (La. App. 2 Cir. 6/26/19), 277 So. 3d 874, *writ denied*, 19-01320 (La.

13

10/8/19), 280 So. 3d 171. All of these factors were considered by the trial court before it declined to appoint a sanity commission. The trial court even went into detail as to each factor and explained its reasoning for the decision on each of them.

The trial court noted that Gilbert's claim of schizophrenia was not supported by any actual diagnosis in the medical records. The trial court also based its decision on the recordings of multiple phone calls made by Gilbert to witnesses wherein Gilbert threatened action against them if they did not testify according to his wishes. The trial court found that Gilbert's behavior in this regard evidenced his ability to understand the nature of the charge against him and appreciate its seriousness. We find no abuse of discretion in the trial court's denial of the motion to appoint a sanity commission.

*Errors Patent*

In accordance with La. C. Cr. P. art. 920, all appeals are reviewed for errors patent on the face of the record. La. C. Cr. P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at "hard labor" is an impermissible indeterminate sentence. *State v. Norman*, 05-794 (La. App. 5 Cir. 3/14/06), 926 So. 2d 657, *writ denied*, 06-1366 (La. 1/12/07), 948 So. 2d 145.

Gilbert was sentenced pursuant to the second-degree murder statute, La. R.S. 14:30.1, which mandates the sentence be at hard labor.

Because the statute mandates hard labor and there is no discretion allowed, the trial judge's failure to state that this sentence was to be at hard labor is harmless error and no corrective action is required.

14

## CONCLUSION

For the foregoing reasons, the conviction and sentence of defendant, Richard L. Gilbert, are affirmed. In order to clarify the sentence, we rule that it is to be served at hard labor.

**AFFIRMED.**